STATE OF MICHIGAN
IN THE UNITED STATED DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

FILED

03 JUL -2 PM 4: 56

_____ CLERK
_____ RICT COURT
_____ DISTRICT MICH.

TIMOTHY J. RYAN and
CHRISTINE A. RYAN,

     Plaintiffs,

v

ADELE MCGINN-LOOMIS and MARY
BENEDICT,

     Defendants.

CASE NO.:  **1 : 0 3 CV 0 4 3 9**

HON.  **David W. McKeague
U.S. District Judge**

_____

## COMPLAINT AND JURY DEMAND

Plaintiffs state:

## PARTIES

1.    Plaintiffs are residents of the City of Grand Rapids, Kent County, State of Michigan, and are the natural parents of Claire Evelyn Ryan (Claire).

2.    Defendant Adele McGinn-Loomis (Loomis) is a resident of the City of Grand Rapids, Kent County, State of Michigan.

3.    Defendant Mary Benedict (Benedict) is a resident of Kent County, State of Michigan and is an attorney engaged in the practice of law within Kent County, State of Michigan.

## JURISDICTION AND VENUE

4.    This action is brought under 42 U.S.C. § 1983 to recover damages and to otherwise redress a deprivation, under color of state law, rights guaranteed by the constitution of the United States. This Court, therefore, has jurisdiction under 28 U.S.C. § 1343.

5. This action includes claims based upon state law that are so related to the 42 U.S.C. § 1983 claims that they form part of the same case or controversy. This Court, therefore, has jurisdiction of the state law claims pursuant to 42 U.S.C. § 1367.

6. Because all defendants reside within Kent County, State of Michigan, venue is in the United States District Court for the Western District of Michigan is proper under 28 U.S.C. § 1331.

## FACTUAL ALLEGATIONS

7. During the summer of 2001, Loomis conspired with plaintiffs' then-minor daughter, Claire, for Claire to run away from plaintiffs' home.

8. On September 10, 2001, Claire ran away from plaintiffs' home.

9. On or about September 16, 2001, Claire moved into Loomis' home.

10. Loomis concealed Claire's presence in her home from plaintiffs.

11. Loomis and Benedict conspired to file a petition for Loomis to become Claire's legal guardian.

12. On September 17, 2001, plaintiff Timothy Ryan went to the Loomis' home to retrieve Claire (then sixteen years old), but was refused. Mr. Ryan was required to obtain police assistance to regain his daughter from Loomis.

13. Loomis is currently and, at all relevant times, has been employed as a deputy court clerk for the Kent County Circuit Court.

14. Before September 2000, the Kent County Probate Court was located at 1501 Cedar, N.E., Grand Rapids, Michigan.

15.     Before September 2000, Loomis was employed as a clerk for the Kent County Probate Court at 1501 Cedar, N.E., Grand Rapids, Michigan.

16.     The Honorable Patricia D. Gardner is and, at all relevant times, has been a Probate Court Judge assigned to the Family Division of the Kent County Circuit Court.

17.     Before September 2000, the Honorable Patricia D. Gardner was a Probate Court Judge, and her office and court room were located at 1501 Cedar, N.E., Grand Rapids, Michigan.

18.     On or about September 18, 2001, Loomis contacted Benedict, and Loomis and Benedict acted in concert to initiate legal action against plaintiffs.

19.     The purpose of the legal action referred to in the preceding paragraph was to deprive the plaintiffs of their right to the care, custody and management of their minor child, Claire.

20.     Benedict prepared three pleadings entitled a) Complaint for Return and Divorce from Parents (attached as Exhibit A); b) Motion for Ex Parte Order Returning Plaintiff to Grand Rapids, Michigan, Temporary Restraining Order (attached as Exhibit B); and c) Ex Parte Order Regarding Return of Plaintiff to Grand Rapids, Michigan (attached as Exhibit C).

21.     After the close of normal court business hours on September 19, 2001, Loomis contacted Judge Gardner at her home by telephone.

22.     During the telephone conversation referred to in the preceding paragraph, Loomis and Judge Gardner engaged in ex parte communication regarding the proposed legal action involving plaintiffs and Claire.

23.     After the close of normal court business hours on September 19, 2001, Benedict engaged in an ex parte communication with Judge Gardner regarding the proposed legal

3

action involving the plaintiffs and Claire, and she presented to Judge Gardner the ex parte order attached as Exhibit C. Benedict requested that Judge Gardner sign the ex parte order.

24.     Before engaging in the ex parte conversations referred to in the preceding paragraph, Benedict made no attempt to notify plaintiffs, either personally or through counsel, of her intention to request that Judge Gardner sign the ex parte order attached as Exhibit C.

25.     On September 19, 2001, Judge Gardner signed two identical ex parte orders, both attached as Exhibit C, at Benedict's request.

26.     When Judge Gardner signed the ex parte order attached as Exhibit C, there was no case pending in the Kent County Circuit Court, or any other court, involving plaintiffs or Claire.

27.     On September 20, 2001, Benedict filed in the Kent County Circuit Court the Complaint referred to in paragraph 20 and attached as Exhibit A.

28.     The case was designated the Case No. of 01-09528-DF.

29.     When Benedict filed the Complaint attached as Exhibit A, she directed the Kent County Circuit Court Clerk to assign the case to Judge Gardner.  See Exhibit D.

30.     The Kent County Circuit Court Clerk who received the Complaint attached as Exhibit A for filing followed Benedict's direction and assigned the case to Judge Gardner.

31.     Kent County Circuit Court Administrative Policy 1994-3, attached as Exhibit E, prescribes the procedures for assigning matters that need the immediate attention of the court, "without the prospect of, or even the appearance of judge-shopping."

32.     MCR 3.207 provides that the "court may issue an ex parte order . . . with regard to any matter within its jurisdiction."

4

33.     MCR 8.111(B) requires the random assignment of cases filed in Michigan state courts. To wit: "All cases must be assigned by lot, unless a different system has been adopted by local administrative order under the provisions of subrule 8.112." No relevant local administrative rule has been adopted.

34.     There was no "matter" within the Kent County Circuit Court's jurisdiction when Judge Gardner signed the ex parte order attached as <u>Exhibit C</u>.

35.     Benedict knew or should have known that there was no matter within the Kent County Circuit Court's jurisdiction when she presented the ex parte order to Judge Gardner.

36.     Benedict knew or should have known that her direction to the court clerk who accepted for filing the Complaint attached as <u>Exhibit A</u> violated Kent County Circuit Court Administrative Policy 1994-3, MCR 3.207 and the required random assignment of judges to cases provided for by MCR 8.111(B).

37.     Upon information and belief, Loomis and Benedict acted in concert to misuse Loomis' position as a court clerk to avoid the normal and required random assignment of judges to cases and, instead, inappropriately and illegally secured the appointment of Judge Gardner for their lawsuit.

38.     Loomis and Benedict conspired to misuse Loomis' position as a court clerk to gain ex parte access to Judge Gardner.

39.     Upon information and belief, Benedict and Loomis made untruthful disparaging comments about plaintiffs during their ex parte contacts with Judge Gardner.

40.     The ex parte order that Judge Gardner signed contains the following recitation: "The court has read and considered plaintiff's verified motion and affidavit." See <u>Exhibit C</u>.

5

41.     At the time that Judge Gardner signed the ex parte order, there had been no affidavit, verified complaint or other sworn testimony submitted in support of the relief sought in the proposed ex parte order.

42.     At the time that Judge Gardner signed the ex parte order, no complaint, verified motion or other pleading involving the plaintiffs or Claire had been filed with the court.

43.     Upon information and belief, Claire was not aware that Benedict had prepared and filed the complaint attached as Exhibit A at the time that the complaint was filed.

44.     Upon information and belief, Claire had not authorized Benedict to file the complaint attached as Exhibit A at the time that the complaint was filed.

45.     There is no cause of action for divorce from parents in Michigan.

46.     Plaintiffs filed a motion to dismiss the complaint attached as Exhibit A, which Judge Gardner granted.

47.     Defendants knew or should have known that the complaint for divorce attached as Exhibit A was a frivolous pleading.

48.     On October 1, 2001, Benedict filed a pleading entitled "Amended Complaint for Declaration of Rights, Emancipation, Et Al" (hereinafter referred to as "the complaint for emancipation"). A copy of the complaint for emancipation is attached as Exhibit F.

49.     Count I of the complaint for emancipation is entitled "Emancipation" and was purportedly based on MCL 722.4, *et seq.* See Exhibit F.

51.     The complaint for emancipation alleges that plaintiffs had enrolled Claire in a "boot camp in the State of Utah." See Exhibit F.

6

52.     Before filing the complaint for emancipation, Benedict had been served with plaintiffs' "Answer to Complaint for Return and Divorce from Parents." Attached to that answer was extensive literature regarding Cross Creek Manor, its programs and purposes. Plaintiffs made the agonizing decision to send their very troubled daughter Claire to Cross Creek Manor in an effort to help her with her problems.

53.     The attachments to the answer referred to in the preceding paragraph demonstrate that Cross Creek Manor is not a "boot camp." Instead, they show that Cross Creek Manor is a highly regarded boarding school with a residential treatment center specifically designed for girls.

54.     When Benedict made the allegation that Claire was sent to "a boot camp in the State of Utah," she knew that the allegation was false.

55.     The amended complaint includes an allegation that Claire "is financially able to provide for herself." See Exhibit F.

56.     At the time that Benedict made the allegation referred to in the preceding paragraph, she knew that Claire was not financially able to provide for herself.

57.     At the time that Benedict made the allegation referred to in paragraph 53, Benedict knew that the allegation was false.

58.     As Benedict knew or should have known, MCL 722.4a requires a petition for emancipation to be "signed and verified by the minor."

59.     At the time that the complaint for emancipation attached as Exhibit F was filed, it was signed only by Benedict. It was not signed and verified by Claire.

60.     No signed and verified emancipation petition has ever been filed.

7

61.     As Benedict knew or should have known, MCL 722.4a requires that an emancipation petition include "a declaration by the minor indicating that he or she has demonstrated the ability to manage his or her financial affairs."

62.     No emancipation petition has ever been filed which includes a declaration by Claire that she has demonstrated the ability to manage her financial affairs.

63.     As Benedict knew or should have known, under MCL 722.4a, an emancipation petition shall include an affidavit by a physician, nurse, member of the clergy, psychologist, family therapist, certified social worker, social worker, social work technician, school administrator, school counselor, teacher, law enforcement officer or duly regulated child care worker, and the affidavit must declare that the individual has personal knowledge of the minor's circumstances and that the individual believes that under those circumstances emancipation is in the best interest of the minor.

64.     No such affidavit as described in the preceding paragraph has ever been filed in support of an emancipation of Claire.

65.     Upon information and belief, before filing the complaint for emancipation, Benedict, acting on her own and/or through others, sought to obtain affidavit(s), as described in paragraph 61, and was unsuccessful in obtaining such affidavits.

66.     As Benedict knew or should have known, under MCL 722.4c, the court shall issue an emancipation order only if the minor establishes, among other things, that an objecting parent or guardian is not providing the minor with support.

67.     At the time that Benedict filed the complaint for emancipation, she knew that plaintiffs objected to an emancipation of their minor child Claire.

8

68.     At the time that Benedict filed the complaint for emancipation, she knew that Claire was enrolled at Cross Creek Manor and was receiving room, board, education and counseling services there.  Benedict also knew that plaintiffs were paying all expenses associated with Claire's attendance at Cross Creek Manor.

69.     Count II of the complaint for emancipation is entitled "Abuse and Neglect." See Exhibit E.

70.     As Benedict knew or should have known, MCL 712A.11 requires that a petition alleging abuse and neglect be verified.

71.     The complaint for emancipation was signed only by Benedict.  It was never verified. See Exhibit F.

72.     As Benedict knew or should have known, MCL 712A.11 requires that an abuse and neglect petition "set forth plainly the facts" which allegedly constitute abuse and neglect.

73.     Paragraph 45 of the complaint for emancipation lists the conduct which Benedict alleges constitutes parental abuse and neglect as follows:

A.     That upon information and belief the [Claire] was told to leave her parents home;

B.     That upon information and belief the [plaintiffs] are not interested in [Claire] residing in their home and are not willing to enter into a Guardianship plan;

C.     That the [plaintiffs] have forcefully enrolled [Claire] in a boot camp for troubled children, when [Claire] is not a troubled child;

D.     That said boot camp program is likely to be more harmful to [Claire] rather than helpful;

E.     That upon information and belief the [plaintiffs] are not willing to engage in services to assist in reuniting [Claire] with the family;

9

F.   That the parties were involved with Catholic Social Services Early Impact program, but [plaintiff Christine Ryan] terminated the involvement after the child was told to leave the [plaintiffs'] home.

74.   The prayer for relief under Count II of the complaint for emancipation requests that the court "order that [Claire] is a temporary ward of the State," and "determine suitable placement for her and terminate the [plaintiffs'] parental rights." See Exhibit F.

75.   At the time that Benedict signed the complaint for emancipation, she knew that the program at Cross Creek Manor included individual and group counseling for Claire, and family counseling that would include Claire, her parents and her siblings.

76.   At the time that Benedict signed the complaint for emancipation, she knew that plaintiff Timothy Ryan had utilized police assistance to regain his daughter from the Loomis household.

77.   Benedict is an experienced family law practitioner, and as such she could not have had a good faith belief that the allegations of paragraph 45 in the complaint for emancipation, even if true, could constitute parental abuse and neglect justifying the termination of parental rights and the making of children wards of the State.

78.   On December 12, 2001, Benedict filed a Petition for Appointment of Guardian of Minor. The petition falsely states that "the parents permit the minor to reside with another person." A copy of the Petition for Appointment of Guardian is attached as Exhibit G.

79.   At a hearing held on December 13, 2001, Benedict announced to the court that, because she had filed a "Petition for Appointment of a Guardian of Minor," she expected to dismiss the complaint for emancipation.

80.     Under Michigan law, a Michigan State Court does not have jurisdiction of an abuse and neglect petition which alleges violation(s) of MCL 712A.2(b), and which requests placement of the child, unless the court first conducts an evidentiary hearing and, based upon evidence adduced at that hearing, concludes that there is probable cause to believe that one or more of the allegations of the petition are true and fall within MCL 712A.2(b). See *In re Hatcher*, 443 Mich 426; 505 NW2d 834 (1993).

81.     Judge Gardner never conducted any such evidentiary hearing as described in the preceding paragraph.

82.     Judge Gardner never made any finding that there was probable cause to believe that any allegation of Count II of the complaint for emancipation attached as <u>Exhibit F</u> was true.

83.     Judge Gardner never concluded that any allegation of the complaint for emancipation, even if true, fell within MCL 712A.2(b).

84.     At a hearing held on October 8, 2001, Judge Gardner claimed that "based on the conflicting allegations that have been made in this case," she had jurisdiction to appoint a guardian ad litem.

85.     At the hearing held on October 8, 2001, Judge Gardner appointed Judith Ostrander (Ostrander) as Claire's guardian ad litem.

86.     Ostrander accepted the appointment as guardian ad litem.

87.     Ostrander prepared a guardian ad litem report dated October 16, 2001.

88.     There was never any evidence presented to the court in support of the allegations made in the complaint for emancipation attached as <u>Exhibit F</u>.

11

89.　Judge Gardner ordered the following things in Case No. 01-09528-DZ:

    A.　That plaintiffs return Claire to Grand Rapids from Cross Creek Manor.

    B.　That Claire reside with a person named Nancy Truel.

    C.　That Claire attend Forest Hills Central High School.

    D.　That Benedict be appointed Claire's Attorney .

    E.　That Claire participate in counseling with Judith Lowery Baars.

    F.　That plaintiffs attend counseling with Judith Lowery Baars.

    G.　That the plaintiffs have only limited parenting time with Claire.

90.　Judge Gardner had no jurisdiction to issue the orders described in the preceding paragraph.

91.　In seeking the orders described in paragraph 78, Benedict, in conspiracy with Loomis, failed to comply with the following requirements of Michigan law:

    A.　The requirement of MCR 3.207, that motions for ex parte orders be accompanied by verified complaints and affidavits.

    B.　The requirement of MCL 722.4a(1) that an emancipation petition be signed and verified by the minor.

    C.　The requirement of MCL 722.4a(1)(e) that an emancipation petition include a declaration by the minor indicating that he or she has demonstrated the ability to manage his or her financial affairs.

    D.　The requirement of MCL 722.4a(2) that an emancipation petition be accompanied by an affidavit by one of the thirteen enumerated processionals.

    E.　The requirement of MCL 712A.11 that an abuse and neglect petition be verified.

F.     The requirement of MCR 5.965 and *In Re Hatcher, supra,* that the circuit court not take jurisdiction of abuse and neglect cases unless it conducts a preliminary hearing and makes a finding of probable cause.

92.    Under duress, plaintiffs agreed to permit Claire to reside with Joan Holmes.

93.    At the request of Joan Holmes and her attorney, plaintiffs agreed to a guardianship with Joan Holmes as guardian for Claire.

## COUNT I
## AGAINST ADELE-MCGINN LOOMIS
## 42 USC § 1983

94.    Plaintiffs restate the allegations of the preceding paragraphs.

95.    Loomis is a court employee and her actions with regard to the assignment of Judge Gardner to Case No. 01-09528-DZ and the use of her position to gain ex parte access for herself and Benedict to Judge Gardner constituted state action and were done under color of state law.

96.    Loomis, in conspiracy with Benedict, misused her position as a court employee to deprive plaintiffs of their right to a randomly assigned judge in Case No. 01-09528-DZ, and she secured the appointment of that case to the judge of her choice, Judge Gardner.

97.    Loomis, in conspiracy with Benedict, misused her position as a court employee to gain improper ex parte access to Judge Gardner.

98.    Plaintiffs have a fundamental right protected by the United States Constitution to the companionship, care, custody and management of their children.

99.    Plaintiffs have a fundamental right protected by the United States Constitution to a fair and impartial judge randomly assigned pursuant to established procedures in any legal proceeding to which they are party.

13

100. Loomis, in conspiracy with Benedict, deprived plaintiffs of the rights described in paragraphs 98 and 99.

101. Loomis, in conspiracy with Benedict, abused the legal process and maliciously prosecuted frivolous divorce, emancipation, and abuse and neglect claims against plaintiffs for the purpose of depriving plaintiffs of their fundamental constitutional rights as described in paragraphs 98 and 99 to procure improper interim orders, and using the frivolous claims as a means to coerce plaintiffs to agree to a guardianship arrangement for Claire.

102. As a result of Loomis' acts, as described in this complaint, plaintiffs have suffered damages, including but not limited to:

    A.    Economic damage.

    B.    Humiliation.

    C.    Embarrassment.

    D.    Mortification.

    E.    Severe emotional distress.

Wherefore, plaintiffs request that they be awarded judgment against Loomis in an amount to be determined that will fairly and adequately compensate them for their injuries, along with their costs and attorneys fees incurred in prosecuting this action.

## COUNT II
## AGAINST MARY BENEDICT
## 42 USC § 1983

103. Plaintiffs restate the previous allegations.

104. Benedict is an attorney licensed to practice law in Michigan.

14

105.    Benedict, in conspiracy with Loomis, secured the inappropriate and illegal assignment of Judge Gardner to Case No. 01-09528-DZ, and she conspired with Loomis to use Loomis' position as a court clerk to gain ex parte access to Judge Gardner. This conspiracy between Benedict and Loomis constituted state action and was done under color of state law.

106.    Benedict, in conspiracy with Loomis, misused Loomis' position as a court employee to deprive plaintiffs of their right to a randomly assigned judge in Case No. 01-09528-DZ, and they illicitly secured the appointment of the judge of their choice, Judge Gardner.

107.    Benedict, in conspiracy with Loomis, misused Loomis' position as a court employee to gain improper ex parte access to Judge Gardner.

108.    Plaintiffs have a fundamental right protected by the United States Constitution to the companionship, care, custody and management of their children.

109.    Plaintiffs have a fundamental right protected by the United States Constitution to a fair and impartial judge randomly assigned pursuant to established procedures in any legal proceeding to which they are party.

110.    Benedict, in conspiracy with Loomis, deprived plaintiffs of the rights described in paragraph 108 and 109.

111.    Benedict, in conspiracy with Loomis, abused the legal process and maliciously prosecuted frivolous divorce, emancipation, and abuse and neglect claims against plaintiffs for the purpose of depriving plaintiffs of their fundamental constitutional rights, as described in paragraph 108 and 109, by procuring improper interim orders, and using the frivolous claims as a means to coerce plaintiffs to agree to a guardianship arrangement for Claire.

15

112. As a result of Benedict's acts, as described in this complaint, plaintiffs have suffered damages, including but not limited to:

  A.  Economic damage.

  B.  Humiliation.

  C.  Embarrassment.

  D.  Mortification.

  E.  Severe emotional distress.

Wherefore, plaintiffs request that they be awarded judgment against Benedict in an amount to be determined that will fairly and adequately compensate them for their injuries, along with their costs and attorneys fees incurred in prosecuting this action.

## COUNT III
## AGAINST ADELE MCGINN-LOOMIS AND MARY BENEDICT
## CONSPIRACY UNDER 42 USC § 1983

113. Plaintiffs restate the previous allegations.

114. Benedict and Loomis conspired to secure the inappropriate and illegal assignment of Judge Gardner to Case No. 01-09528-DZ, and they conspired to use Loomis' position as a court clerk to gain ex parte access to Judge Gardner. This conspiracy between Benedict and Loomis constituted state action and was done under color of state law.

115. Benedict and Loomis conspired to misuse Loomis' position as a court employee to deprive plaintiffs of their right to a randomly assigned judge in Case No. 01-09528-DZ, and they illicitly secured the appointment of the judge of their choice, Judge Gardner.

116. Benedict and Loomis conspired to misuse Loomis' position as a court employee to gain improper ex parte access to Judge Gardner.

16

117. Plaintiffs have a fundamental right protected by the United States Constitution to the companionship, care, custody and management of their children.

118. Plaintiffs have a fundamental right protected by the United States Constitution to a fair and impartial judge randomly assigned pursuant to established procedures in any legal proceeding to which they are party.

119. Benedict, in conspiracy with Loomis, deprived plaintiffs of the rights described in paragraph 117 and 118.

120. Benedict and Loomis conspired to abuse the legal process and maliciously prosecute frivolous divorce, emancipation, and abuse and neglect claims against plaintiffs for the purpose of depriving plaintiffs of their fundamental constitutional rights, as described in paragraph 117 and 118, by procuring improper interim orders, and using the frivolous claims as a means to coerce plaintiffs to agree to a guardianship arrangement for Claire.

121. As a result of defendants' acts, as described in this complaint, plaintiffs have suffered damages, including but not limited to:

    A.    Economic damage.

    B.    Humiliation.

    C.    Embarrassment.

    D.    Mortification.

    E.    Severe emotional distress.

Wherefore, plaintiffs request that they be awarded judgment against defendants, jointly and severally, in an amount to be determined that will fairly and adequately compensate them for their injuries, along with their costs and attorneys fees incurred in prosecuting this action.

## COUNT IV
## AGAINST ADELE MCGINN-LOOMIS AND MARY BENEDICT
## COMMON LAW MALICIOUS PROSECUTION

122.    Plaintiffs restate the previous allegations.

123.    Case No. 01-09528-DZ terminated with a dismissal of all claims against plaintiffs.

124.    Defendants proceeded with their claims in Case No. 01-09528-DZ even though they had knowledge that those claims had no legal or factual basis.

125.    Defendants purpose in filing the claims in Case No. 01-09528-DZ was not to secure an adjudication on the actual claims made, but rather to separate Claire from her family by securing improper interim orders and to utilize the litigation process as a means to harass plaintiffs and to coerce plaintiffs to agree to a guardianship arrangement for Claire.

126.    By reason of defendants' malicious prosecution of their claims in Case No. 01-09528-DZ, plaintiffs have suffered a deprivation of their right to the care, custody, and companionship of their daughter, and this constitutes special injury.

127.    By reason of defendants' illicit avoidance of the random draw process for judicial assignments, and their engaging in improper ex parte communication with Judge Gardner, plaintiffs were deprived of their constitutional right to a fair and impartial judge, and this constitutes special injury.

128.    By reason of defendants' malicious prosecution of Case No. 01-095280-DZ, plaintiffs have suffered damages, including but not limited to:

A.      Economic damage.

B.      Humiliation.

18

C.      Embarrassment.

D.      Mortification.

E.      Severe emotional distress.

Wherefore, plaintiffs request that they be awarded judgment against defendants, jointly and severally, in an amount to be determined that will fairly and adequately compensate them for their injuries, along with their costs and attorneys fees incurred in prosecuting this action.

## COUNT V
## AGAINST ADELE MCGINN-LOOMIS AND MARY BENEDICT
## STATUTORY MALICIOUS PROSECUTION

129.    Plaintiffs restate the previous allegations.

130.    MCL 600.2907 is a Michigan Statute which states as follows:

Every person who shall, for vexation and trouble or maliciously, cause or procure any other to be arrested, attached, or in any way proceeded against, by any process or civil or criminal action, or in any other manner prescribed by law, to answer to the suit or prosecution of any person, without the consent of such person, or where there is no such person known, shall be liable to the person so arrested, attached or proceeded against, in treble the amount of the damages and expenses which, by any verdict, shall be found to have sustained and incurred by him; and shall be liable to the person in whose name such arrest or proceeding was had in the sum of $200.00 damages, and shall be deemed guilty of a misdemeanor, punishable on conviction by imprisonment in the county jail for a term not exceeding 6 months.

131.    The divorce, emancipation, and abuse and neglect claims in Case No. 01-09528-DZ were filed naming Claire as plaintiff and Timothy Ryan and Christine Ryan as defendants.

132.    Upon information and belief, the divorce, emancipation and abuse and neglect claims in Case No. 01-09528-DZ were filed without the prior knowledge of Claire.

19

133.    Upon information and belief, the divorce, emancipation, and abuse and neglect claims in Case No. 01-09528-DZ were filed without the prior consent of Claire.

134.    The divorce, emancipation, and abuse and neglect claims of Case No. 01-09528-DZ were filed for the purpose of causing plaintiffs vexation and trouble.

135.    Case No. 01-09528-DZ was filed in violation of MCL 600.2907.

136.    Under MCL 600.2907, plaintiffs are entitled to treble their actual damage.

137.    By reason of defendants' malicious prosecution of Case No. 01-09528-DZ plaintiffs have suffered damages, including but not limited to:

    A.    Economic damage

    B.    Humiliation.

    C.    Embarrassment.

    D.    Mortification.

    E.    Severe emotional distress.

Wherefore, plaintiffs request that they be awarded judgment against defendants, jointly and severally, in an amount to be determined that will fairly and adequately compensate them for their injuries, along with their costs and attorneys fees incurred in prosecuting this action.

### COUNT VI
### AGAINST ADELE MCGINN-LOOMIS AND MARY BENEDICT
### ABUSE OF PROCESS

138.    Plaintiffs restate the previous allegations.

139.    Defendants' ulterior purpose in making the claims in Case No. 01-09528-DZ was to effectuate a separation of Claire from her family by securing improper interim orders and coercing plaintiffs to agree to a guardianship arrangement.

20

140.     By filing and prosecuting the frivolous claims in Case No. 01-09528-DZ for the purpose of using the expense and vexation of litigation as a means to coerce plaintiffs to agree to a guardianship for their daughter, defendants made an irregular use of process.

141.     By reason of defendants' abuse of process in Case No. 01-09528-DZ, plaintiffs have suffered damages, including but not limited to:

   A.     Economic damage.

   B.     Humiliation.

   C.     Embarrassment.

   D.     Mortification.

   E.     Severe emotional distress.

Wherefore, plaintiffs request that they be awarded judgment against defendants, jointly and severally, in an amount to be determined that fairly and adequately compensates them for their injuries, along with their costs and attorneys fees incurred in prosecuting this action.

## COUNT VII
## AGAINST ADELE MCGINN-LOOMIS AND MARY BENEDICT
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

142.     Plaintiffs restate the previous allegations.

143.     Defendants' conduct as described in this complaint was extreme and outrageous.

144.     Defendants' conduct as described in this complaint was committed intentionally or at least recklessly.

145.     As a result of defendants' conduct as described in this complaint, plaintiffs have suffered severe emotional distress.

21

146.    By reason of defendants' intentional infliction of emotional distress, plaintiffs have suffered damages, including but not limited to:

      A.     Economic damage.

      B.     Humiliation.

      C.     Embarrassment.

      D.     Mortification.

      E.     Severe emotional distress.

Wherefore, plaintiffs request that they be awarded judgment against defendants, jointly and severally, in an amount to be determined that will fairly and adequately compensate them for their injuries, along with their costs and attorneys fees incurred in prosecuting this action.

Miller, Johnson, Snell & Cummiskey, P.L.C.
Attorneys for Plaintiffs

Dated: June ___, 2003

By _____
    James S. Brady (P11110)
    Richard E. Hillary, II (P56092)

Business Address:
    250 Monroe Avenue NW, Suite 800
    Grand Rapids, MI  49503
    616/831-1700

## JURY DEMAND

Plaintiffs request a trial by jury of all claims raised in this complaint.

Miller, Johnson, Snell & Cummiskey, P.L.C.
Attorneys for Plaintiffs

Dated: July 1, 2003

By _____

James S. Brady (P11110)
Richard E. Hillary, II (P56092)

Business Address:
    250 Monroe Avenue NW, Suite 800
    Grand Rapids, MI 49503
    616/831-1700