UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

TIMOTHY J. RYAN and,
CHRISTINE A. RYAN,

      Plaintiffs,

vs.

ADELE McGINN-LOOMIS and
MARY BENEDICT,

      Defendants.
_____/

Case No. 1:03-cv-439

Hon. David W. McKeague

## JOINT STATUS REPORT

A Rule 16 Scheduling Conference is scheduled for the 23rd day of September, 2003. Appearing for parties as counsel will be:

James Brady and Richard Hillary for the plaintiffs.

Judy Bregman for defendant Adele McGinn-Loomis.

Michael Sullivan and Theresa M. Asoklis for defendant Mary Benedict.

1.     Jurisdiction: The basis for this Court's jurisdiction is 42 U.S.C. § 1983. Each defendant has filed a motion to dismiss, contending, *inter alia*, that this Court lacks subject matter jurisdiction over plaintiffs' claims under the *Rooker-Feldman* doctrine. Defendant Benedict also contends that this Court should abstain from hearing this case under the doctrine established in *Younger v. Harris*, 401 U.S. 37; 91 S.Ct. 746; 27 L.Ed.2d 669 (1971). Plaintiffs contend that the *Rooker-Feldman* doctrine and the doctrine established in *Younger v. Harris* are inapplicable. Both motions are scheduled for argument on October 20, 2003.

2. <u>Jury or Non-Jury</u>: This case is to be tried before a jury.

3. <u>Judicial Availability</u>: The parties do not agree to have their case tried by a Magistrate Judge if the case proceeds to trial.

4. <u>Geographic Transfer</u>: This case does not warrant a transfer for geographic convenience.

5. <u>Statement of the Case</u>:

<u>Plaintiffs' Statement of the Case</u>

This case arises out of conspiracy by the defendants, Adele McGinn-Loomis and attorney Mary Benedict, to abuse the legal process for the purpose of separating a teenage girl from her family. The parents of that girl are the plaintiffs in this case, Timothy and Christine Ryan. The Ryans have been married to each other for 20 years. They have four children. Their oldest child is their daughter, Claire Evelyn Ryan. Claire is currently 18 years old. When Loomis and Benedict commenced their abusive litigation, Claire was 16 years old.

During the Spring and Summer of 2001, Claire had been dating a high school classmate by the name of Ryan McGinn. He is the son of defendant Adele McGinn-Loomis. During the Summer of 2001, defendant McGinn-Loomis, her son, and apparently Claire made a decision that they would all like Claire to leave the Ryan household and move in with the McGinn-Loomis family. The Ryans objected to this plan. And so Claire and defendant McGinn-Loomis began laying plans for Claire to run away and move into the Loomis household.

2

Defendant McGinn-Loomis is a deputy court clerk for the Kent County Circuit Court. The plan she, her son and Claire made was for Claire to run away from home and be concealed in the Loomis household. Upon information and belief, defendant McGinn-Loomis believed that, because of her position with the Kent County Circuit Court, she would be able to persuade a Kent County Circuit Court Judge to sign an Order granting her guardianship of Claire before the Ryans knew where Claire was.

On September 10, 2001, Claire did run away from home. She did move into the McGinn-Loomis household. Timothy Ryan discovered where Claire had gone and went to bring her home. But defendant McGinn-Loomis continued to conceal Claire in her home, and she stood in her driveway chanting and pointing at Mr. Ryan. Her son made obscene gestures. Only with police assistance was Mr. Ryan ultimately able to remove Claire from the McGinn-Loomis household.

After Claire ran away from home, the Ryans discovered that she had been cutting herself with razor blades and found clothes with blood stains on them that corresponded to the areas where she had reportedly been cutting herself. The Ryans found a suicide note Claire had prepared. Earlier in the summer, Claire had been seeing a psychologist, and that psychologist had reported that Claire exhibited traits of a psychological disorder that carried with it a substantial increase in the risk of suicide. Earlier in the summer, Ryan McGinn had locked himself in his bedroom and threatened to kill himself. His mother reported to Mrs. Ryan that he routinely threatened to kill himself. As of September 17, 2001, the date that Mr. Ryan removed Claire from the Loomis household with police assistance, Claire was apparently suicidal, engaging in extremely self-

destructive behavior, and had come under the extremely negative influence of attorney Benedict and McGinn-Loomis and had developed this very unusual relationship with them. The Ryans were afraid that their daughter was headed for teenage suicide and so they made the very difficult decision to send her to a boarding school in Utah with a residential treatment program, Cross Creek Manor. Cross Creek Manor had at least three things recommended that the Ryans found attractive and necessary to diffuse the immediate crisis – no McGinn-Loomis, no razor blades, and intensive psychotherapy.

On September 20, 2001, without the knowledge or consent of Claire, defendant Benedict, in conspiracy with defendant McGinn-Loomis, filed a lawsuit entitled "Divorce from Parents." By that lawsuit, defendants sought to "divorce" Claire from her parents. Although the complaint was filed on September 20, 2001, the litigation actually began the night before when defendants conspired after hours to avoid the random judicial assignment required by law to secure the assignment of the judge of their choice, the Honorable Patricia Gardner. On September 19, 2001, Judge Gardner agreed to sign an Order that defendant Benedict had prepared to send the police to take Claire away from the Ryans. Judge Gardner signed this Order even though it stated that she had read a verified complaint and affidavit. There was no verified complaint and there was no affidavit. Judge Gardner also signed this Order before the commencement of any legal proceeding. There was no notice to the Ryans and no attempt to notify the Ryans of this private meeting between Judge Gardner and attorney Benedict.

Later, defendant Benedict amended her complaint to attempt to set forth claims for "Emancipation" and "Abuse and Neglect." Upon information and belief, both of

4

these claims were filed without the knowledge or consent of Claire. These claims were frivolous and wholly defective on their face. Benedict also signed and filed a petition for guardianship which was false on its face and which she withdrew a few days later. Benedict signed all of these pleadings even though they contained allegations that she knew to be false. All of these claims were ultimately dismissed after the Ryans had filed a motion for summary disposition on March 29, 2002. Rather than allowing Judge Gardner to rule on that motion, attorney Benedict filed a motion requesting that the case be dismissed.

Even though all of defendants' claims were ultimately dismissed, defendants' conduct nonetheless had the effect of depriving the Ryans of their constitutional rights to the care, custody and management of their child.

### Defendant Adele McGinn-Loomis' Statement of the Case

Plaintiffs' statement of the case is vigorously disputed by both defendants. Defendant Loomis' statement of the case is contained in her brief supporting her Motion to Dismiss. In her brief, she claims she did nothing to violate 42 U.S.C. 1983 or any state law. At the time of the events giving rise to this case, Ms. Loomis was employed as a clerk with the Kent County Circuit Court. Her son was dating plaintiff's daughter, Claire. Early one evening in September, 2002, Claire called Ms. Loomis to request help as her parents had determined to send her to Utah against her wishes. Ms. Loomis, knowing Claire had established a relationship with attorney Mary Benedict, called Ms. Benedict to convey Claire's message for help. Ms. Benedict asked Ms. Loomis if she could assist in finding a Kent County family Judge to entertain an ex-parte petition after regular hours.

Ms. Loomis first called Judge Hillary, then Judge Gardner, who said she was willing to discuss the matter with Ms. Benedict.

Ms. Loomis has raised several defenses to this case, which are the subject of her Motion to Dismiss. She claims that the plaintiffs are unable to establish any case under 42 U.S.C. 1983 because, among other defenses, they had a full and fair opportunity to litigate the issues involved in this case in state court. In fact, plaintiff, Tim Ryan, recently argued to the Michigan Court of Appeals that he was deprived of the constitutional right to raise his daughter for the same reasons he brings this lawsuit. Defendant Loomis has also raised immunity issues.

### Defendant Mary Benedict's Statement of the Case

Plaintiffs' statement of the case is vigorously disputed by both defendants. Defendant Benedict's statement of the case is contained in her brief supporting her Motion to Dismiss. Mary Benedict appropriately represented plaintiffs' then almost-seventeen year old daughter (Claire Ryan) in a divorce /emancipation proceeding in the Kent County Circuit Court. As a result of plaintiffs' actions in taking their daughter (against her wishes) from Grand Rapids to Detroit in an effort to fly her to Utah and enroll her in a questionable behavioral modification program, Ms. Benedict was compelled to use extraordinary means on behalf of Claire to prevent such from happening. Upon being informed of the Ryans' plans for Claire, Ms. Benedict contacted a family court judge (after court hours) who was willing to intervene and sign an ex-parte order providing that Claire remain in Grand Rapids until a hearing could be held. The ex-parte order was ineffective, however, as plaintiffs had successfully transported Claire

to Chicago and then on to Utah before the authorities could intervene. The next day defendant filed a petition for divorce from parents, which was later amended to set forth a complaint for emancipation. Before a hearing could be held to determine if emancipation would be granted, plaintiffs stipulated to having a guardian appointed for Claire. Once the guardianship was in place, Claire agreed to dismiss her complaint for emancipation. Plaintiffs then filed this lawsuit. Defendant Benedict's motion to dismiss was filed as her first responsive pleading and will be heard on October 20, 2003.

6. <u>Pendent State Claims</u>: This case includes pendent state claims. In addition to plaintiffs' federal claims brought under 42 U.S.C. § 1983, plaintiffs have filed the following state-law claims against each defendant: (a) common law malicious prosecution (Count IV); (b) statutory malicious prosecution (Count V); (c) abuse of process (Count VI); and (d) intentional infliction of emotional distress (Count VII). Each defendant has filed a motion to dismiss these claims, contending that: (a) there is no separate statutory tort for malicious prosecution; (b) plaintiffs cannot demonstrate that the prior proceeding was terminated in their favor, therefore, they have failed to state a claim for malicious prosecution; (c) because plaintiffs cannot demonstrate that defendants engaged in an improper use of process, they have failed to state a claim for abuse of process; and, (d) because defendants' actions, as alleged by plaintiffs, did not rise to the level of extreme or outrageous conduct, plaintiffs have failed to state a claim for intentional infliction of emotional distress.

Defendant Loomis wishes to supplement her Motion to Dismiss with respect to the state law issues.

7. <u>Joinder of Parties and Amendment of Pleadings</u>: The defendants propose that the parties file all motions for joinder of parties to this action and all motions to amend the pleadings within 90 days of the Opinion on the Motions to Dismiss.

The plaintiffs propose that the deadline for filing motions for joinder of parties and amendments to pleadings not be tied to the date of the Opinion on the pending Motions to Dismiss. Instead, the plaintiffs propose that the deadline for such motions be January 23, 2004.

8. <u>Disclosures and exchanges</u>:

i. In light of the pending motions to dismiss, the parties have not made Fed. R. Civ. P. 26(a)(1) disclosures. Defendants object to conducting any discovery before the Motions to Dismiss are decided. They do not object to the Court setting deadlines for disclosures, etc., so long as those deadlines do not start to run until after the motions are decided.

Plaintiffs propose commencing discovery now. Plaintiffs' proposed discovery deadlines are set forth below, beginning with the exchange Fed. R. Civ. P. 26(a)(1) disclosures on October 7, 2003.

ii. Lay witness disclosures are not applicable because Rule 26(a)(1) disclosures are required.

iii. Defendants propose that the plaintiffs furnish the names of the plaintiffs' expert witnesses to the defendants within 60 days of the Opinion on the Motions to Dismiss, and that the defendants furnish the names of their expert witnesses to the plaintiffs 30 days thereafter.

8

The plaintiffs propose setting a firm date for the disclosure of expert witnesses without reference to the date of the Opinion on the pending Motions to Dismiss. The plaintiffs propose that they furnish the names of their expert witnesses to the defendants by November 24, 2003, and that the defendants furnish the names of their expert witnesses to the plaintiffs by December 24, 2003.

In this case, it would be advisable to exchange written expert witness reports, should they exist, as contemplated by Fed. R. Civ. P. 26(a)(2). Reports should be exchanged according to the following schedule:

    a.    The defendants propose that plaintiffs produce their expert witness reports within 90 days after the Motions to Dismiss are decided.

The plaintiffs propose setting a firm date for the disclosure of their expert witness reports without reference to the date of the Opinion on the pending Motions to Dismiss. The plaintiffs propose that they will produce their expert witness reports by January 23, 2004.

    b.    The defendants propose that they will produce their expert witness reports within 30 days after plaintiffs disclose their expert witness reports. Plaintiffs propose setting the date for the disclosure of defendants' expert witness reports as February 23, 2004.

    iv.    The parties are unable to agree upon a voluntary production of documents at this time but will proceed with normal written discovery.

9. <u>Discovery</u>: Defendants object to conducting any discovery before the Motions to Dismiss are decided. Plaintiffs propose commencing discovery immediately for a six-month period to be completed by April 23, 2004.

    i. The parties will make the disclosures described in paragraph 8. Additional discovery can be conducted with interrogatories, depositions, requests for admission, and discovery upon non-parties. The parties agree upon the presumptive limitations applicable to interrogatories and depositions prescribed in the amendments to Rules 26 and 30 of the Federal Rules of Civil Procedure (effective 12/1/00).

    ii. The defendants believe that discovery should be conducted in three phases: Phase I - party depositions, Phase II - non-party fact witnesses and Phase III - experts.

        The plaintiffs do not object to separating fact and expert discovery into two phases, but they do object to bifurcating fact discovery into phases. Plaintiffs' ability to freely conduct fact discovery among parties and non-parties alike, without sequencing that discovery, is essential to plaintiffs' ability to prepare their case and explore potential joinder of additional parties and claims.

10. <u>Motions</u>: The parties anticipate that all dispositive motions will be filed 30 days after the completion of discovery. Plaintiffs believe that this date can be set at May 24, 2004. The parties acknowledge that it is the policy of this Court to prohibit the consideration of non-dispositive discovery motions unless accompanied by a certification that the moving party has made a reasonable and good faith effort to reach agreement with opposing counsel on the matters set forth in the motion.

11. <u>Alternative Dispute Resolution</u>: The parties recommend that this case be submitted to Voluntary Facilitative Mediation immediately following resolution of the pending motions.

12. <u>Length of Trial</u>: Counsel estimate that the trial will last approximately 8 days, total, allocated as follows: 5 days for the plaintiffs' case, and 3 days for the defendants' cases.

13. <u>Prospects of Settlement</u>: The parties have not engaged in settlement discussions.

14. <u>Court Electronic Document Filing System</u>: Counsel have read the "Notice to Counsel Regarding Electronic Filing" attached to the Order Setting Rule 16 Scheduling Conference. Counsel for plaintiffs and defendant Benedict believe that this is a suitable case for electronic case filing and counsel are prepared to so participate. Counsel for defendant Loomis is not participating in the electronic case filing at this time.

Respectfully submitted,

MILLER, JOHNSON, SNELL & CUMMISKEY, P.L.C
Attorneys for Plaintiffs

Dated: September 18, 2003     By _____
James S. Brady
Richard E. Hillary, II

Business Address:
250 Monroe Ave., N.W., Ste. 800
P. O. Box 306
Grand Rapids, MI  49501-0306
Telephone: (616) 831-1700

                                        BREGMAN & WELCH
                                        Attorneys for Defendant Adele McGinn-Loomis

                                        /s/ with authority on 9/18/03

Dated: September ___ , 2003      By _____
                                        Judy E. Bregman

                                        Business Address:
                                        212 Washington Street, P.O. Box 885
                                        Grand Haven, MI 49417
                                        Telephone: (616) 846-3145


                                        COLLINS, EINHORN, FARREL & ULANOFF, P.C.
                                        Attorneys for Defendant Mary Benedict

                                        /s/ with authority on 9/18/03

Dates: September ___ , 2003      By _____
                                          Michael J. Sullivan
                                        Theresa M. Asoklis

                                        Business Address:
                                        4000 Town Center, Ste. 909
                                        Southfield, MI 48075
                                        Telephone: (248) 355-4141