STATE OF MICHIGAN
IN THE UNITED STATED DISTRICT COURT FOR THE
WESTERN DISTRICT OF MICHIGAN

TIMOTHY J. RYAN and
CHRISTINE A. RYAN,

      Plaintiffs,

v

ADELE MCGINN-LOOMIS and MARY
BENEDICT,

      Defendants.

CASE NO. 1:03CV0439

HON. David W. McKeague

---

## PLAINTIFFS' BRIEF IN SUPPORT OF THEIR MOTION TO COMPEL THE DEPOSITIONS OF JUDGE PATRICIA GARDNER, BARBARA INGRAM AND BEVERLY FOUNTAIN

### INTRODUCTION

"A judicial officer called to the stand in a case in which she is not sitting as a judge is not disqualified by [her] office from testifying." McCormick on Evidence (5th ed.), Vol. 1, § 68, p. 284.

Despite this axiom of evidence, the Honorable Patricia Gardner and her staff, Beverly Fountain (her secretary/clerk) and Barb Ingram (her court reporter), have advised plaintiffs' counsel that, although they will appear for depositions in this case, they will not testify regarding nearly all of the topics on which plaintiffs' counsel intends to examine them. Their refusal to provide testimony is based upon the assertion of an unsupported, common-law "judicial privilege" and Canon 3A.(6) of the Michigan Code of Judicial Conduct. Judge Gardner and her staff have asserted this "privilege" even though plaintiffs' counsel has assured them that he will not examine them regarding Judge Gardner's mental processes in arriving at any particular decision in the state court action over which she presided. Instead, the examinations

will involve only the facts and circumstances surrounding events which are critically relevant to the issue of state action and to which Judge Gardner and her staff are witnesses. As eyewitnesses to these events, Judge Gardner and her staff are no different than any other witness. They cannot avoid testifying simply because Judge Gardner presided over the state court action around which the events occurred. The law is clear on this point. Judge Gardner and her staff must be compelled to provide testimony about the subject matters that plaintiffs' counsel intends to explore.

## BACKGROUND

This is a § 1983 case with supplemental state law claims arising out of defendants' prosecution and conspiracy to prosecute frivolous claims of emancipation, abuse and neglect and "Divorce from Parents" claims in the state court case of *Claire Evelyn Ryan v. Timothy Ryan and Christine Ryan*, Kent County Probate Court Case No. 01-09528-DZ.

At the time that Judge Gardner and her staff refused to testify in this federal case, the state court case was on appeal in the Michigan Court of Appeals where plaintiffs (defendants in the state court case) had asked the Court of Appeals to declare every order entered in the state court action void ab initio. Defendant Mary Benedict was Claire Ryan's purported attorney in the state court action. Defendant Adele McGinn-Loomis is a Kent County Court Clerk whose son was dating plaintiffs' daughter Claire when defendant Benedict commenced the state court action. On January 15, 2004, the Michigan Court of Appeals issued its decision in the state court case. In a published opinion, the Court of Appeals reversed and remanded the case to the state court with instructions to enter an order of dismissal with prejudice in plaintiffs' favor (the defendants in the state court case) and vacate all orders entered by the trial court as void ab initio. A copy of the Michigan Court of Appeals Opinion is attached as **Tab 1**.

2

Many of the facts relevant to this motion are set forth in the Michigan Court of Appeals decision and in plaintiffs' brief in opposition to defendants' motions to dismiss. Nonetheless, plaintiffs will provide this Court with general background information as it relates to this motion.

On September 19, 2001, defendant McGinn-Loomis facilitated an illegal, ex parte contact between defendant Benedict and Judge Gardner. This facilitation possibly involved defendant McGinn-Loomis telephoning Judge Gardner's court reporter, Barb Ingram, who in turn telephoned Judge Gardner (at her home presumably), who in turn telephoned defendant McGinn-Loomis and gave her permission to provide defendant Benedict with Judge Gardner's home telephone number. (See Defendant McGinn Loomis' Brief in Support of her Motion to Dismiss, p. 2). It also may have involved defendant McGinn-Loomis telephoning Judge Gardner at her home directly. (See Motion for Disqualification Transcript, dated October 17, 2001, pp. 18-19; **Tab 2**). Based upon the different explanations for how the meeting between Judge Gardner and defendant Benedict was arranged, the depositions of Judge Gardner and her staff are absolutely critical on the issue of state action that is presently before the Court.

Irrespective of how defendant McGinn-Loomis coordinated the meeting between Judge Gardner and defendant Benedict, it is undisputed that Judge Gardner and defendant McGinn-Loomis had a conversation on September 19, 2001, regarding plaintiffs and their daughter Claire. But it is unknown what they discussed. Judge Gardner has previously stated that, besides apologizing for calling her at her home and disclosing that Claire Ryan was her son's girlfriend, defendant McGinn-Loomis merely inquired whether she could provide defendant Benedict with her home telephone number. (See Motion for Disqualification Transcript, dated October 17, 2001, pp. 18-19; **Tab 2**).

3

Contrary to Judge Gardner's explanation, however, defendant McGinn-Loomis filed an affidavit in the state court action in which she made disparaging comments about plaintiffs and swore that those comments were verbally provided to Judge Gardner. (See Affidavit of Adele McGinn-Loomis, **Tab 3**.) Although defendant McGinn-Loomis has since denied in deposition that she ever met with Gardner on the evening of September 19, 2001, or that she ever verbally gave the information set forth in the affidavit to Judge Gardner, given the conflicting statements of Judge Gardner and defendant McGinn-Loomis, Judge Gardner's deposition is absolutely necessary to explore all aspects of her conversation with defendant McGinn-Loomis on September 19, 2001.

Following defendant McGinn-Loomis' conversation with Judge Gardner, it is undisputed that defendant Benedict met with Judge Gardner somewhere – presumably at Judge Gardner's home but unquestionably at a mutually agreed-upon location. It is unknown what defendant Benedict and Judge Gardner discussed at that meeting, but it is undisputed that Judge Gardner signed the ex parte order attached as **Tab 4**. This order recites that Judge Gardner had reviewed and considered a verified motion and affidavit. Importantly, on September 19, 2001, no such pleadings existed, yet it is unknown what defendant Benedict or defendant McGinn-Loomis might have told Judge Gardner about the existence of these pleadings. It is critical that plaintiffs be allowed to depose Judge Gardner regarding this issue.

It is also undisputed that on September 19, 2001, when Judge Gardner signed the ex parte order attached as **Tab 4**, there was no lawsuit pending within the jurisdiction of the state court. The lawsuit was not filed until the following day. (See the Docket Sheet for Kent County Probate Court Case No. 01-09528-DZ, attached as **Tab 5**.) Because there was no case within the jurisdiction of the state court on September 19, 2001, Judge Gardner should not have signed the

4

ex parte order. But it is unknown what defendant Benedict may have represented to Judge Gardner about the pendency of such a state court action when she met with Judge Gardner on September 19, 2001. She or defendant Adele-McGinn-Loomis could have expressed or implied to Judge Gardner that a case had been opened and assigned to Judge Gardner. Plaintiffs must be allowed to examine Judge Gardner regarding this conversation. In fact, if Judge Gardner was misled into believing that a case had previously been filed and assigned to her, this may very well explain in part why Judge Gardner signed the ex parte order.

On the morning of September 20, 2001, defendant Benedict filed her "Complaint for Divorce from Parents." (See the Docket Sheet for Kent County Probate Court Case No. 01-09528-DZ, attached as **Tab 5**.) Waiting at the Kent County Circuit Court Clerk's Office window was defendant McGinn-Loomis, who receipted the new case and, after discussions with defendant Benedict, assigned the case to Judge Gardner. See Confidential Memorandum of Mary Kelly, dated August 20, 2002; **Tab 6**. The new case was not assigned in accordance with a then-existing administrative directive, which required that the case be assigned to the Honorable Paul Sullivan. See **Tab 7**. Instead, defendants, McGinn-Loomis and Benedict, assigned the case to the judge of their choice, Judge Gardner, after each had illicitly communicated with Judge Gardner regarding the matter the night before. Plaintiffs must be permitted to examine Judge Gardner and her staff regarding their knowledge of defendants' manipulation of the judicial assignment.

Plaintiffs presently have no intention to examine Judge Gardner and her staff regarding Judge Gardner's mental processes in arriving at any decision in the state court action. They have made this clear to Judge Gardner. Plaintiffs merely want to examine these witnesses

5

regarding their observations and their conduct. They are witnesses to events relevant to plaintiffs' federal court action and the issue of state action. They must be compelled to testify.

Plaintiffs have made every reasonable effort to coordinate the depositions of Judge Gardner and her staff. On December 8, 2003, plaintiffs' counsel wrote Judge Gardner seeking deposition dates. See **Tab 8**. On December 17, 2003, Judge Gardner wrote back citing Canon 3A.(6) of the Michigan Code of Judicial Conduct and representing that, because the state court case was still pending in the Michigan Court of Appeals, it was inappropriate for her to speak about the case. See **Tab 9**.

In response, on December 19, 2003, Plaintiffs' counsel again wrote Judge Gardner explaining to her that the scope of the intended deposition clearly fell outside Canon 3A.(6), and he again asked her to provide deposition dates. Having received no response from Judge Gardner, plaintiffs' counsel reluctantly served deposition subpoenas upon Judge Gardner, Barb Ingram and Beverly Fountain.

In response to the deposition subpoenas, plaintiffs' counsel received a telephone call from attorney Thomas Koernke who advised him that he would be representing Judge Gardner and her staff in connection with the depositions. He stated that Judge Gardner and her staff would likely refuse to testify at their depositions, but he invited a letter from plaintiffs' counsel advising him of the areas that he would likely cover during the depositions.

On January 9, 2004, plaintiffs' counsel sent that letter to counsel for Judge Gardner, advising him of the subject matters that would likely be covered during the depositions and providing him with authority for the propriety of the intended depositions. See **Tab 10**.

On January 12, 2004, the morning of the depositions, Judge Gardner's counsel responded. Although he stated that Judge Gardner and her staff would testify in two of the areas

described by plaintiffs' counsel, namely, their relationships with each defendant, they would not testify in any of the other areas, claiming "the privilege." See **Tab 11**.

Following a telephone conversation between plaintiffs' counsel and Judge Gardner's attorney, they agreed to adjourn the depositions of Judge Gardner and her staff and bring the issue to this Court for a ruling.

For the reasons that follow, this Court should issue an order compelling Judge Gardner and her staff to provide testimony in the areas described in plaintiffs' January 9, 2004, letter to Judge Gardner's attorney.

## LAW AND ARGUMENT

I.  **A JUDGE AND HER STAFF ARE LIKE ANY OTHER WITNESS TO FACTS AND EVENTS THAT UNFOLD BEFORE THEM. THEY CANNOT HIDE BEHIND THE CLOAK OF THE JUDICIARY TO AVOID HAVING TO TESTIFY TO THOSE FACTS AND EVENTS.**

As stated above, "[a] judicial officer called to the stand in a case in which she is not sitting as a judge is not disqualified by [her] office from testifying." McCormick on Evidence (5th ed..), Vol. 1, § 68, p. 284. Although it is generally inappropriate to question a judge regarding her mental processes in deciding an issue before her, see, e.g., *United States v. Morgan*, 313 U.S. 409, 422; 61 S.Ct. 999; 85 L.Ed. 1429 (1941), it is perfectly appropriate to examine a judge regarding relevant matters of fact that do not probe into or compromise the mental processes employed in formulating a particular judgment, see *United States v. Roebuck*, 271 F.Supp.2d 712, 718 (Dist. Virgin Islands, 2003); *United States v. Dowdy*, 440 F.Supp. 894, 896 (W.D.Virginia 1977); *Standard Packaging Corporation v. Curwood, Inc.*, 365 F.Supp. 134, 135 (N.D.Ill. 1973). At this stage in this federal case, plaintiffs merely want to examine Judge Gardner and her staff regarding events to which they are fact witnesses. See **Tab 10**. There is no legitimate basis under the law for these witnesses to refuse to answer questions in these areas.

The only authority cited by Judge Gardner and her staff in support of not providing the requested testimony during their depositions is *Reycraft v. McDonald*, 194 Mich. 500; 160 N.W. 836 (1916). See **Tab 11**. This case does not stand for the proposition for which it was cited. Although the Michigan Supreme Court in *Reycraft*, quoting *Flynn v. Boglarsky*, 164 Mich. 513; 129 N.W. 674 (1911), discussed *a* concept of privilege, the "privilege" in question in *Reycraft* was the privilege to speak without fear of liability, i.e., the privilege to defame. Specifically, *Reycraft* dealt with the exemption from liability in libel and slander cases where a claim of defamation is premised upon statements made in court. *Reycraft* has absolutely nothing to do with a judicial officer's ability to avoid providing relevant, fact-based testimony in a legal proceeding. In fact, there is no such privilege against providing such testimony.

Consequently, Judge Gardner and her staff must be compelled to provide the requested testimony.

## II. CANON 3A.(6) OF THE MICHIGAN CODE OF JUDICIAL CONDUCT DOES NOT PROVIDE A LEGITIMATE BASIS FOR JUDGE GARDNER OR HER STAFF TO AVOID PROVIDING TESTIMONY.

Judge Gardner and her staff also rely upon Canon 3A.(6) to avoid having to submit to depositions. This Canon provides:

> A judge should abstain from public comment about a pending or impending proceeding in any court, and should require similar abstention on the part of court personnel subject to the judge's direction and control. This subsection does not prohibit a judge from making public statements in the course of official duties or from explaining for public information the procedures of the court or the judge's holdings or actions.

First, it is highly questionable whether a judge can rely upon a Canon of Judicial Conduct to avoid complying with a lawful subpoena to provide testimony. But assuming that a judge can so rely, this particular Canon, by its own terms, pertains to judges making *public comments* about pending or impending cases. Neither Judge Gardner nor her staff has been

8

asked to publicly comment about a pending or impending proceeding in any court. Instead, they have been involuntarily subpoenaed to testify in a federal lawsuit about events that they either witnessed or participated in. This Canon was clearly not designed to prevent such testimony.

And importantly, the pending proceeding that Judge Gardner cites as preventing her from complying with the deposition subpoenas is the state court case of *Claire Evelyn Ryan v. Timothy Ryan and Christine Ryan*, Kent County Probate Court Case No. 01-09528-DZ, which *was pending* in the Michigan Court of Appeals when Judge Gardner raised this particular objection to not providing her testimony. But that appeal has now been decided. See **Tab 1**. The only task left to be accomplished in the state court action is strict compliance with the order of remand of the Michigan Court of Appeals, namely, the entry of an order dismissing the state court action with prejudice and declaring all orders entered by the state court void ab initio – a purely ministerial function.

Judge Gardner and her staff's reliance upon this Canon of Judicial Conduct is misplaced. They cannot avoid providing relevant, fact-based testimony regarding events that they witnessed or participated in.

## **CONCLUSION**

For these reasons, plaintiffs request that this Court enter an order compelling Judge Gardner, Barb Ingram and Beverly Fountain to submit to depositions on the issue of state action.

Respectfully submitted,

Miller, Johnson, Snell & Cummiskey, P.L.C.
Attorneys for Plaintiffs

Dated: January 20, 2004        By _____
                                  James S. Brady (P11110)
                                  Richard E. Hillary, II (P56092)

Business Address:
250 Monroe Avenue NW, Suite 800
Grand Rapids, MI  49503
616/831-1700

803575   79411-001   1/20/04