1.

STATE OF MICHIGAN

COURT OF APPEALS

CLAIRE EVELYN RYAN,

       Plaintiff-Appellee,

v

TIMOTHY J. RYAN and CHRIS RYAN,

       Defendants-Appellants.[1]

FOR PUBLICATION
January 15, 2004
9:00 a.m.

No.  240695
Kent Circuit Court
LC No.  01-09528 DZ

Before:  Cooper, P.J. and Fitzgerald and Kelly, JJ.

KELLY, J.

      Defendants appeal as of right the trial court's order of dismissal without prejudice and its order denying defendants' motion to rescind all orders entered by the trial court.  We reverse and remand with instructions to enter an order of dismissal with prejudice in defendants' favor and vacate all previous orders entered by the trial court as void ab initio.

I.  Factual Background and Procedural History[2]

      Defendants and their four children lead an upper middle class lifestyle with the children attending private schools.  Plaintiff, the oldest, was a few months shy of her seventeenth birthday at the time of the events giving rise to this action.  In 2001, the relationship between plaintiff and defendants deteriorated.  According to defendants, plaintiff began dating Ryan McGinn in early 2000.  Although defendants were initially supportive of this relationship, viewing it as "normal

---

[1] Although the original action was filed as a complaint for divorce, plaintiff filed an "amended complaint" including emancipation and abuse and neglect petitions.  At some point thereafter, the trial court sua sponte changed the caption to "In re Claire Evelyn Ryan," but the case classification code remained "DZ."  Because the action originated as a complaint for divorce and the lower court clerk never changed the caption, we retain the original caption.  MCR 8.119.

[2] The factual background is derived from the affidavits and documentation filed mostly by defendants in the lower court.  Not once did the trial court conduct an evidentiary hearing.  Rather, the trial court entered each order based upon improper ex-parte conversations, pleadings and/or arguments of counsel.

-1-

dating," they became concerned when plaintiff reported excessive drinking at McGinn's household, that McGinn's mother, Adele McGinn-Loomis, did not like plaintiff and that McGinn complained of problems with his parents. Timothy Ryan further stated:

> On July 4, 2001, my wife reported to me that Claire, who had been at Ryan McGinn's house for a bon-fire, had broken up with him. She also reported to me that Adele McGinn-Loomis had screamed at Claire, in the presence of other guests at the bon-fire, that Claire was a "whore and a slut." On the morning of July 5, Claire confirmed to me that Adele had called her a whore and a slut. At that point I told Claire she should not go to the McGinn-Loomis home. Later that day I learned from Claire's mother that Claire had announced that even though she had broken up with Ryan, she was going to secretly date him so that his mother would not know about it. When I learned this I told Claire that she should not be secretly dating Ryan because she should not be party to Ryan sneaking around behind his parents' back. I also reiterated that even if his parents changed their mind about the dating she would still not be allowed to go to their house.

On July 5, 2001, Timothy Ryan found plaintiff packing her bags and threatening to run away. According to Timothy Ryan, after plaintiff started walking down the street, he put her in the car, driven by Chris Ryan, and took her to Pine Rest for family counseling. Because plaintiff tried to jump out of the moving car, Timothy Ryan held her "tightly." After the initial counseling session, plaintiff and defendants returned home, but sought counseling on another occasion. According to the counselor, plaintiff suffered from a depressive disorder and borderline personality features. Noting the family's communication difficulties and plaintiff's need of more intensive therapy, the counselor referred the family to Catholic Social Services.

A few days later, after receiving a report of physical abuse, an investigator from Child Protective Services (CPS) came to the Ryans' house to talk about the July 5, 2001, incident. According to Timothy Ryan:

> He [the investigator] told us that his preliminary conclusion was that there was no abuse and he wanted us to understand that the reason he came is because any time a complaint is made CPS is required to make such an investigation, whether there is any substance to it or not. He also told us that while his conclusion was that there was no abuse he would ultimately have to have his conclusion approved by a supervisor, and that unless we heard something further we should assume that his conclusion had been approved.

No further action was taken by CPS.

On September 10, 2001, plaintiff packed her bags and left the house to stay with family friends. Defendants decided to allow plaintiff to stay at the friends' home for a few days, presumably as a "cooling off" period. But because plaintiff had not returned by the end of the week, Timothy Ryan called the friends suggesting that they tell plaintiff she was no longer welcome. Plaintiff subsequently moved to the McGinn-Loomis household although defendants did not approve of this living arrangement. Timothy Ryan also alleged:

> On September 16 and September 17, I also learned that Claire had been planning to run away for several weeks or months; Adele McGinn-Loomis had been

encouraging Claire to run away; Adele McGinn-Loomis had told Claire that she would obtain guardianship of her; and Adele McGinn-Loomis had taken Claire to a lawyer's office to sign papers about guardianship.

Timothy Ryan called the police on September 17, 2001, and reported that plaintiff had run away from home and was at the McGinn-Loomis house. When the police arrived at the McGinn-Loomis household, plaintiff told the police that she would not go with her father and if she were forced to, she would run away again. Timothy Ryan then made arrangements for plaintiff to spend the evening with neighborhood friends. That evening, defendants decided to send plaintiff to Cross Creek Manor, a private boarding school in Utah.[3] That same evening, plaintiff called McGinn-Loomis twice stating that she was being sent to a boarding school that she did not want to attend and "begging" McGinn-Loomis to come and get her. The following day, plaintiff was flown to Utah and was no longer in the trial court's jurisdiction.

On September 19, 2001, the trial court entered an ex-parte order stating:

1. The Detroit Metro police department, or any other police department having proper jurisdiction, is authorized to detain the Plaintiff and return her to Grand Rapids, MI immediately.

2. That the minor child be placed at the Bridge in Grand Rapids, MI for a period of 2 weeks and pending a hearing before the Honorable Circuit Court.

_____

[3] According to documents filed in the trial court:

Cross Creek Manor is a residential treatment center for girls located in the "Color Country of the West" in southwest Utah. [It] serve[s] Junior High and High School age students. These girls have excellent potential but are headed for some irreversible problems. Typically, these teens who are determined to do their "own thing" regardless of who it hurts, or how it may alter their futures.

Parents often realize that something must be done to change their daughter's present course. Intervention in a controlled environment becomes essential. Without a controlled environment, the parent's attempt to intervene is often lost to the influence of a negative peer group.

Years of experience have enabled Cross Creek Manor to develop a quality program designed to benefit each girl. Cross Creek manor provides a balanced program that includes individual and group therapy with licensed therapists, individualized academic instruction, behavior modification, intensive seminars/workshops, physical fitness, a structured daily schedule, and emotional growth/personal development courses.

3.   That the Honorable Circuit Court will immediately schedule a hearing regarding the Plaintiff's complaint.

At the time the order was entered, no complaint or motion had been filed with the circuit court clerk and plaintiff was already residing in Utah. Notice of the order was not provided to defendants. In addition, there was no hearing before the order was entered. Rather, there were two telephone calls[4] between the trial court, McGinn-Loomis,[5] and the purported attorney[6] for plaintiff, Mary L. Benedict.

The following day, Benedict filed a "Complaint for Return and Divorce from Parents." The complaint, based primarily on defendants' choice of school for plaintiff, requested that plaintiff be divorced from her parents because she is an adult able to make her own decisions. The complaint cited no authority for the relief requested, nor was it verified or accompanied by an affidavit. At the same time, Benedict filed a motion for return of plaintiff. Notably, although the September 19, 2001, order stated that the trial court had "read and considered Plaintiff's verified motion and affidavit" before issuing the order, it is uncontested that the motion, filed the day after the order was entered, was not verified or accompanied by an affidavit.

On September 28, 2001, Benedict filed a motion for the appointment of guardian ad litem, release of records, and temporary placement. Benedict also filed a motion for an amended ex-parte order returning plaintiff to Grand Rapids.[7] Benedict also requested that plaintiff be allowed to live with a family friend during the pendency of this matter, or, if that was unavailable, that plaintiff be permitted to choose an alternative living situation.

Defendants moved to rescind the September 19, 2001, order contending it was an improper ex-parte order. Defendants also moved for summary disposition of the complaint for failure to state a claim under MCR 2.116 (C)(8), and for costs against Benedict for filing a frivolous action. Defendants asserted that (1) the motion for appointment of a guardian ad litem was not accompanied by an affidavit, verified statement, or required notice (2) plaintiff did not having standing to file a complaint for divorce from her parents, an action that does not exist in Michigan and (3) plaintiff, a minor, lacked capacity to contract with Benedict for representation.

---

[4]   The telephone calls were made to the trial judge's home. The record is devoid of any indication that the administrative rule for the random assignment of cases to prevent "judge shopping" was complied with or even considered. MCR 8.111. Nor was any record made detailing these improper ex-parte contacts until defendants' moved to disqualify the trial court. Michigan Code of Judicial Conduct, Cannon 3(A)(4).

[5]   McGinn-Loomis is a deputy clerk in the trial court.

[6]   We use the term "purported attorney" because as a minor, plaintiff did not have the capacity to retain an attorney. *Dep't of Civil Rights v Beznos Corp,* 421 Mich 110, 120; 365 NW2d 82 (1984).

[7]   In support for this motion, Benedict cursorily stated: "That the Plaintiff has standing to pursue this action pursuant to In Re Jessica DeBoer; Bowie v Arder; In Re Clausen; In Re Gould; Yang v Long, et al."

Before the motion was heard, Benedict filed an "amended complaint" for "declaration of rights, emancipation, et al.," which essentially consisted of an emancipation petition and an abuse and neglect petition. It is uncontested that plaintiff, who was still in Utah, had no contact with Benedict before the "amended complaint" was filed. The petition for emancipation was not verified, nor did it include any of the statutorily required affidavits or documents. The unverified abuse and neglect petition requested "suitable placement" for plaintiff and termination of defendants' parental rights alleging, in part, "that the Defendants have forcefully enrolled the Plaintiff in a boot camp for troubled children, when the Plaintiff is not a troubled child [and] that said boot camp program is likely to be more harmful to the child rather than helpful . . . ."

> At an October 8, 2001, hearing, the trial court ruled:
> Based on the conflicting allegations that have been made in this case, in order for the Court to be able to make fair and impartial rulings with regard to these matters, and recognizing that children, especially when they're older children, are not property that the parents have an absolute right to control, and I do believe that a guardian ad litem would be appropriate.
>
> Therefore, the Court will enter an order for the appointment of Attorney Judy Ostrander as Claire Ryan's guardian ad litem.

The trial court reserved its ruling on defendants' motion for summary disposition for a later date.

On October 9, 2001, the trial court entered an order appointing Judy Ostrander guardian ad litem for plaintiff yet failed to articulate the authority under which the order was entered. It also ordered the parties to fully cooperate with the guardian ad litem, that the guardian ad litem have access to all records and reports pertaining to plaintiff, and that the guardian ad litem have private telephone access to plaintiff. Learning that Benedict had sought legal assistance in Utah in an attempt to enforce the original ex-parte order to return plaintiff to Grand Rapids, the trial court stayed the ex-parte order pending a continuation of the hearing.

On October 25, 2001, the trial court reconvened to address defendants' motion for summary disposition. At that time, defense counsel argued:

> So the question I had for the Court and I still do, is what's going on when a lawyer purporting to represent a minor who has no capacity to hire that lawyer, does not have capacity to be a plaintiff, can file an action under a cause of action that doesn't exist, divorce from parents, and from that bootstrap it not only into ex-parte relief, but the appointment of a guardian ad litem and thereafter amend and try to get before this Court and say, all right, it's an emancipation action and everything that's happened before this date can simply fall under the umbrella of this emancipation action after the fact. That makes no sense whatsoever.

Defendants also addressed the procedural deficiencies of the pleadings and, with respect to the substance of the claim, argued that parental decisions regarding their children's welfare are preeminent. Defense counsel further argued:

> So in -- in light of everything faced by the Ryans at that point in time, a daughter who may be suicidal, a daughter who's clearly got depression issues, a daughter who may have borderline personality issues, a daughter who has run away and

-5-

moved in with a boyfriend, boyfriend's mother who has made various threats that this Court has seen in Mr. Ryan's affidavits, including maybe being a person who's going to be Claire's guardian, when faced with all of that, how is it that Mr. and Mrs. Ryan, the defendants in this matter, can be second guessed and sued by Ms. Benedict?

Benedict responded that in this case the fundamental rights of the child and parents conflict. She further argued that plaintiff's best interests were at issue and that the school in Utah was not in her best interest, but rather, emotionally harmful.

The trial court ruled:

Before the Court is a Motion to Dismiss [sic]. Originally that motion spoke to the divorce complaint. The complaint has now been amended to address two counts, the first being emancipation, and the second a possible abuse and neglect that could lead to a third-party custody guardianship matter.

The Court will grant in part the motion and deny in part the motion.

I do believe that the Motion to Dismiss is appropriate as to the original action.

The Court does not find that the complaint fails in full because there was a proper amendment per court rule.

The Court does find that the actions for emancipation and abuse and neglect are intensely factual issues that must be determined at future hearings.

* * *

But in any event, I do believe that the amended complaint should stand, and that the technical requirements that [defense counsel] cites are not enough to defeat the complaint since the parents have, by their own actions, removed the child from the State of Michigan and this general jurisdiction to cure.

So the complaint, as amended, shall stand, and the Motion to Dismiss shall be denied as it pertains to the amended complaint with counts with regard to emancipation and abuse and neglect.

On November 2, 2001, the trial court entered an order dismissing plaintiff's original complaint, but denying summary disposition as to the "amended complaint."

On December 12, 2001, the trial court entered an order that defendants receive counseling, again without articulating any underlying authority. On December 20, 2001, plaintiff returned to Michigan and was placed into foster care pursuant to the guardian ad litem's recommendation for temporary placement. Plaintiff was also given twenty-one days to cure the emancipation petition. On January 18, 2002, defendants filed objections to the temporary placement arguing that the required hearing was never held.

On January 31, 2002, plaintiff filed her own affidavit in support of the emancipation petition, but failed to file any other required documentation or affidavits. Over defendants' objections, plaintiff sought and received an order permitting her contact with McGinn and McGinn-Loomis. Meanwhile, the trial court severely curtailed defendants' contact with plaintiff. Yet defendants continued to pay plaintiff's support, private school tuition at West Catholic High School, medical insurance and other expenses.

On February 8, 2002, defendants again moved for summary disposition of the emancipation and abuse and neglect petitions citing MCR 2.116(C)(1), (4), (8) and (10). Defendants argued that the emancipation petition should be dismissed because it was fatally defective on its face and lacked factual support. Regarding the abuse and neglect petition, defendants argued that because the trial court failed to conduct a preliminary hearing or make findings of probable cause, it did not have subject matter jurisdiction. Because the trial court lacked jurisdiction, defendants argued, the orders issued should be declared void ab initio. Defendants also argued that the petition for abuse and neglect was insufficient on its face.

Benedict responded that the trial court had heard volumes of oral argument and reviewed numerous documents, all of which provided probable cause to believe that the allegations contained in the petition might be proved at a hearing. Benedict further asserted that defendants' motion was simply another harassment tool to cause plaintiff stress. The guardian ad litem also filed an objection to defendants' motion to rescind the orders arguing that the time for filing an objection to these orders had expired and defendants' motion was an attempt to reset the "time clock" for filing an appeal. The guardian ad litem also argued that the trial court's jurisdiction stemmed from the filing of the petition for emancipation, not the abuse and neglect petition.

On March 22, 2002, the trial court heard defendants' motion for summary disposition of the emancipation and abuse and neglect petitions. At that time, Benedict declared that she filed a motion to dismiss both petitions and the other requests for declaratory relief without prejudice. The trial court granted this motion. But with regard to defendants' motion to have the previous orders declared void ab initio, the trial court stated, "I've dismissed the case and find the motion to be mute [sic]." The trial court entered an order denying defendants' motion to have the orders declared void ab initio and entered an order dismissing the case without prejudice.

## II. Mootness

"A case is moot when it presents only abstract questions of law that do not rest upon existing facts or rights." *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998). Generally, this Court need not reach moot issues or declare legal principles that have no practical effect on the case "unless the issue is one of public significance that is likely to recur, yet evade judicial review." *Federated Publications, Inc v Lansing*, 467 Mich 98, 112; 649 NW2d 383 (2002). Because this case was dismissed and plaintiff has since reached the age of majority, the issues presented on appeal no longer rest upon existing facts or rights. But we address the issues nonetheless because we find them of public significance likely to recur, yet evade judicial review.

III. "Divorce" from Parents

The trial court's September 19, 2000, ex-parte order and the order appointing the guardian ad litem, entered pursuant to plaintiff's complaint for divorce[8] are void because the trial court lacked subject matter jurisdiction over an action for "divorce from parents," a claim unrecognized in Michigan.

A.  Standard of Review

Whether the trial court had subject matter jurisdiction over a claim is a question of law that we review de novo. *Harris v Vernier,* 242 Mich App 306, 309; 617 NW2d 764 (2000).

B.  Subject Matter Jurisdiction

We agree with defendants that the trial court lacked subject matter jurisdiction over plaintiff's "complaint for divorce from parents."

> Jurisdiction of the subject matter is the right of the court to exercise judicial power over a class of cases, not the particular case before it; to exercise the abstract power to try a case of the kind or character of the one pending. The question of jurisdiction does not depend on the truth or falsity of the charge, but upon its nature: it is determinable on the commencement, not at the conclusion, of the inquiry. Jurisdiction always depends on the allegations and never upon the facts. [*Altman v Nelson,* 197 Mich App 467, 472-473; 495 NW2d 826 (1992) (citations omitted).]

The circuit court's jurisdiction over divorce cases is strictly statutory. *McCormick v McCormick,* 221 Mich App 672, 680-681; 562 NW2d 504 (1997). Jurisdiction is conferred on the circuit court by MCL 552.6 which provides in pertinent part:

> (1) A complaint for divorce may be filed in the circuit court upon the allegation that there has been a breakdown of the *marriage relationship* to the extent that the objects of matrimony have been destroyed and there remains no reasonable likelihood that the marriage can be preserved. In the complaint the plaintiff shall make no other explanation of the grounds for divorce than by the use of the statutory language. [Emphasis added.]

"Marriage is inherently a unique relationship between a man and a woman." MCL 551.1. It follows that a court only has jurisdiction over the divorce of a marriage between a man and woman. In other words, while the family division of the circuit court has subject matter jurisdiction over married couples seeking a divorce, it is without jurisdiction over claims filed by

---

[8] Because the trial court entered the order appointing a guardian ad litem after plaintiff filed the complaint for divorce, but before plaintiff filed the "amended complaint," we conclude the order was entered under the complaint for divorce.

children to divorce their parents. That the trial court entertained such a claim, instead of dismissing it outright, is unfathomable. When there is a lack of subject matter jurisdiction, regardless what formalities the trial court may have taken, its actions are void. *Altman, supra* at 473.

C. Standing

Plaintiff also lacked standing to file the "complaint for divorce from parents." In actions governed by statute, a party must have standing bestowed by statute. See *Girard v Wagenmaker*, 437 Mich 231, 252; 470 NW2d 372 (1991). Rights accrue as a result of a legal marriage which complies with the statutory requirements of MCL 551.1; legal rights do not accrue based upon a relationship which does not meet the statutory requirements. *Ford v Wagner*, 153 Mich App 466, 470; 395 NW2d 72 (1986). Plaintiff's relationship with her parents does not afford her with the legal rights of a marriage because it does not meet the statutory requirements of MCL 551.1.

D. Parental Choice of School

We also find without merit the premise on which the "complaint for divorce from parents" was based, i.e., that plaintiff objected to her parents' decision to send her to a private boarding school in Utah. Historically, Michigan has recognized parents' right to manage their children without state interference, absent compelling circumstances that threaten a child's safety and welfare. Michigan laws and procedural rules, in keeping with the United States Constitution, "protect the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition." *Moore v City of East Cleveland*, 431 US 494, 503; 97 S Ct 1932; 52 L Ed 531 (1977). The Fourteenth Amendment's Due Process Clause provides heightened protection against government interference with the fundamental liberty interest of parents to make decisions concerning the care, custody, and control of their children. This includes the right of parents to control their children's education. *Troxel v Granville*, 530 US 57, 68; 120 S Ct 2054; 147 L Ed 2d 49 (2000); *Meyer v Nebraska*, 262 US 390, 401; 43 S Ct 625; 67 L Ed 1042 (1923).

The fundamental liberty interest of parents with regard to their children permeates Michigan laws. MCL 722.1 *et seq.* codifies this fundamental right. Our courts have also emphasized this right. In *Herbstman v Shiftan*, 363 Mich 64, 67; 108 NW2d 869 (1961), our Supreme Court recognized parents' fundamental right with regard to their children:

> It is a well-established principle of law that the parents, whether rich or poor, have the natural right to the custody of their children. The rights of parents are entitled to great consideration, and the court should not deprive them of custody of their children without extremely good cause. A child also has rights, which include the right to proper and necessary support; education as required by law; medical, surgical, and other care necessary for his health, morals, or well-being . . . . It is only when these rights of the child are violated by the parents themselves that the child becomes subject to judicial control.

The Court recently reaffirmed this parental right to the care and custody of their children absent proof of parental unfitness:

> Parents have significant interest in the companionship, care, custody, and management of their children, and the interest is an element of liberty protected by due process. A due-process violation occurs when a state-required breakup of a natural family is founded solely on a "best interests" analysis that is not supported by the requisite proof of parental unfitness. [*In Re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003) (citations omitted).]

Here, the trial court wrongfully interfered in the Ryan family life based on an unrecognized claim brought by an attorney without authority to act on plaintiff's behalf. Not only did the trial court fail to give special weight to defendants' decision to send plaintiff to a private boarding school specializing in troubled teenage girls, but also gave no weight to the presumption that defendants were fit parents. Instead, the trial court, without holding any hearing whatsoever, substituted its judgment for that of parents who had never been determined unfit. "'[T]he Due Process Clause does not permit a State to infringe on the fundamental right of parents to make childrearing decisions simply because a state judge believes a 'better' decision could be made[.]'" *Hetzel v Hetzel*, 248 Mich App 1, 20; 638 NW2d 123 (2001), quoting *Troxel, supra* at 72-73. Indeed, this case was less about recognition of a child's rights than the intentional misuse of the legal system to circumvent laws designed to protect and maintain the integrity of families.

### E. Good Faith and Competence

The filing of this action calls into question the good faith and competence of plaintiff's purported attorney.

> Competent handling of a particular issue includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation. . . . [*In re AMB*, 248 Mich App 144, 225; 640 NW2d 262 (2001), quoting the comment following MPRC 1.1.]

Clearly Benedict failed to make any "inquiry into or analysis of the factual or legal elements of the problem." Instead, Benedict presented the court with an unverified, legally unsupported complaint for a claim that has never existed in Michigan.

For these reasons, the ex-parte order for return of plaintiff and order appointing a guardian ad litem[9] entered pursuant to plaintiff's complaint for divorce are void.

---

[9]  Additionally, it is inappropriate to appoint a guardian ad litem for a minor who is a plaintiff. A next friend commences a legal action on behalf of a minor whereas a guardian ad litem defends a cause of action on behalf of a minor. MCR 2.201(E)(1) provides in relevant part:

> (b) If a minor or incompetent person does not have a conservator to represent the person as *plaintiff*, the court shall appoint a competent and responsible person to

(continued...)

IV. Emancipation Petition

The trial court erred in denying defendants' motion for summary disposition of plaintiff's emancipation petition because it was defective on its face and lacked factual support.[10] Although the trial court did not deny defendants' motion, but instead granted Benedict's motion to dismiss without prejudice, we conclude that the trial court should have granted defendants' motion for summary disposition and dismissed the petition with prejudice.

A. Standard of Review

With regard to the emancipation petition, defendants filed their motion for summary disposition in part under MCR 2.116(C)(8). This Court reviews de novo a trial court's decision on a motion for summary disposition. *Koenig v City of South Haven,* 460 Mich 667, 674; 597 NW2d 99 (1999). A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a complaint. *Beaudrie v Henderson,* 465 Mich 124, 129-130; 631 NW2d 308 (2001). The trial court may only consider the pleadings in rendering its decision. *Id.* All factual allegations in the pleadings must be accepted as true. *Dolan v Continental Airlines/Continental Express,* 454 Mich 373, 380-381; 563 NW2d 23 (1997).

B. Statutory Requirements

A minor seeking emancipation may commence an action in the family division of the circuit court pursuant to MCL 722.4a which states in relevant part:

(1) A minor seeking emancipation shall file a petition for emancipation in the family division of circuit court in the county where the minor resides. The petition *shall be signed and verified* by the minor, and *shall include all of the following* information:

(a) The minor's full name and birth date, and the county and state where the minor was born.

_____

(...continued)

appear as next friend on his or her behalf, and the next friend is responsible for the costs of the action.

(c) If the minor or incompetent person does not have a conservator to represent the person as *defendant,* the action may not proceed until the court appoints a guardian ad litem, who is not responsible for the costs of the action unless, by reason of personal misconduct, he or she is specifically charged costs by the court. [Emphasis added; see also MCR 2.201(E)(1); MCL 600.2415.]

Because plaintiff was a plaintiff, not a defendant, appointment of a guardian ad litem was improper.
[10] Defendants assert that the trial court lacked subject matter jurisdiction, but the circuit court family division clearly has original jurisdiction over emancipation petitions. MCL 722.4a.

(b) A certified copy of the minor's birth certificate.

(c) The name and last known address of the minor's parents, guardian, or custodian.

(d) The minor's present address, and length of residency at that address.

(e) A declaration by the minor indicating that he or she has demonstrated the ability to manage his or her financial affairs. The minor may include any information he or she considers necessary to support the declaration.

(f) A declaration by the minor indicating that he or she has the ability to manage his or her personal and social affairs. The minor may include in this section any information he or she considers necessary to support the declaration.

(2) The petition *shall include* an affidavit by any of the following individuals declaring that the individual has personal knowledge of the minor's circumstances and believes that under those circumstances emancipation is in the best interests of the minor:

(a) Physician.

(b) Nurse.

(c) Member of the clergy.

(d) Psychologist.

(e) Family therapist.

(f) Certified social worker.

(g) Social worker.

(h) Social work technician.

(i) School administrator.

(j) School counselor.

(k) Teacher.

(l) Law enforcement officer.

(m) Duly regulated child care provider.

(3) A copy of the petition and a summons to appear at the hearing shall be served on the minor's parents or guardian. A notice of hearing shall be sent to the

individual who provided the affidavit required under subsection (2). [Emphasis added.]

The Legislature's repeated use of the word "shall" indicates a mandatory requirement. See *Scarscella v Pollak,* 461 Mich 547, 549; 607 NW2d 711 (2000). Although our courts have not addressed the effect of failure to file mandatory affidavits and documents in the context of emancipation petitions, our Supreme Court has determined, with respect to medical malpractice cases, that when a required affidavit is absent or defective, the complaint, standing alone, is insufficient to commence a medical malpractice action. *Id.* Likewise, we hold that a petition for emancipation filed without the statutorily mandated affidavits and documents is insufficient to commence an emancipation action.

Here, the trial court excused the lack of affidavits and documents finding they were unavailable because plaintiff was in Utah. The trial court erred. First, the statute does not allow the affidavits and documents to be excused. The statute clearly states that the affidavits and documents must be filed with the petition. MCL 722.4a. Thus, Benedict's promise to supply the affidavits and documents later did not fulfill the statutory requirements. Second, even assuming that defendants sent plaintiff to Utah to prevent the filing of an emancipation petition, this was no basis for excusing mandatory procedure. It is well recognized in Michigan that a parent may provide proper custody for a child with another person so long as it is not neglectful. *In re Systma*, 197 Mich App 453, 455; 495 NW2d 804 (1992); *In re Hurlbut*, 154 Mich App 417, 423; 397 NW2d 332 (1986). Here, the trial court had made no determination that defendants' sending plaintiff to a private boarding school for troubled teenagers was neglectful. Moreover, as we stated above, defendants acted within their rights in making and enacting this decision.

For these reasons, the petition for emancipation failed to state a claim upon which relief could be granted; the trial court should have granted defendants' motion for summary disposition.

### C. Lack of Evidentiary Support

The trial court also erred in denying defendants' motion for summary disposition under MCR 2.116(C)(10) because it was uncontested that defendants objected to the emancipation petition and were providing support for plaintiff.

A motion for summary disposition under MCR 2.116(C)(10) tests whether there is factual support for a claim. *Universal Underwriters Group v Allstate Ins Co,* 246 Mich App 713, 720; 635 NW2d 52 (2001). "Affidavits, pleadings, depositions, admissions, and documentary evidence are considered in reviewing a motion for summary disposition pursuant to MCR 2.116(C)(10), and the evidence is viewed 'in the light most favorable to the party opposing the motion.'" *Id.* "Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." *Id.*

The trial court's authority to act upon a *properly* filed petition, is limited. MCL 722.4b provides:

After a petition is filed, the court may do 1 or more of the following:

-13-

(a) Assign an employee of the court to investigate the allegations of the petition and to file a report containing the results of the investigation with the court.

(b) Appoint legal counsel for the minor.

(c) Appoint legal counsel for the minor's parents or guardian if they are indigent and if they oppose the petition.

(d) *Dismiss the petition if the minor's custodial parent does not consent and is providing support.* [Emphasis added.]

Additionally, MCL 722.4c(2) provides in relevant part:

. . . The court shall issue an emancipation order if it determines that emancipation is in the best interest of the minor and the minor establishes *all* of the following:

(a) That the minor's parent or guardian does not object to the petition; or *if a parent or guardian objects to the petition, that the objecting parent or guardian is not providing the minor with support.*

(b) That the minor is at least 16 years of age.

(c) That the minor is a resident of the state. . . . [Emphasis added.]

Here, it is undisputed that defendants continuously objected to the petition for emancipation. It is further undisputed that defendants had always, and continued throughout these proceedings, to support plaintiff. Therefore, there was no factual basis for the trial court to further consider the emancipation petition.

## V. Abuse and Neglect

Defendants' also argue that the trial court improperly exercised its jurisdiction by ordering plaintiff into temporary placement. We agree. Not only did the trial court err in failing to conduct a preliminary hearing to determine if probable cause existed to authorize the petition, MCR 5.965, it denied defendants the right to a trial on the allegations in the petition, MCR 5.972.[11]

The trial court's jurisdiction in child protection proceedings is governed by MCL 712A.2 which provides in relevant part:

(b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:

---

[11] The court rules governing child protective proceedings were amended as part of new MCR subchapter 3.900, effective May 1, 2003. We refer to the rules in effect at the time this matter was pending before the trial court.

(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.

With regard to an abuse and neglect petition, subject matter jurisdiction is established "when the action is of a class that the court is authorized to adjudicate, and the claim stated in the complaint is not clearly frivolous." *In re Hatcher,* 443 Mich 426, 437; 505 NW2d 834 (1993). The valid exercise of jurisdiction is established by the contents of the petition after the probable cause hearing on the allegations. *Id.* at 438. If the trial court finds probable cause to believe the allegations are true, it may enter preliminary, limited orders concerning the care and placement of the child pending the adjudicative trial.  MCR 5.965(C).  However, the trial court may exercise its full jurisdictional authority only following an adjudication at which at least one of the statutory grounds in MCL 712A.2(b) is proven by trial or plea.  *Id.* at 437; *In re PAP,* 247 Mich App 148, 153; 640 NW2d 148 (2001).  The factfinder must determine by a preponderance of evidence that the statutory requirements of MCL 712A.2 are met.  MCR 5.965 and 5.972(C)(1); *In re Brock,* 442 Mich 101, 109; 499 NW2d 752 (1993). And, a jury trial may be demanded to determine the facts at the adjudicative phase.  MCR 5.911; MCL 712A.17(2); see also *In re Brock, supra* at 108.

Here, because the petition cited to MCL 712A.2, the trial court arguably had subject matter jurisdiction.  But the valid exercise of jurisdiction is yet another question.  Because the amended complaint requested suitable placement, termination of defendants' parental rights, and removal of plaintiff from defendants' custody, the trial court was required to conduct a preliminary hearing to determine whether probable cause existed to substantiate that the facts alleged in the petition were true and fell within MCL 712A.2(b).  Yet without conducting the required hearing, the trial court in essence took custody of plaintiff by removing her from defendants' care and custody and placing plaintiff in foster care.  The trial court improperly exercised its jurisdiction by implicitly authorizing the petition to be filed and ordering plaintiff into temporary foster care.

Child protective proceedings protect children, but the procedural rules are also designed to protect parents from the risk of an erroneous deprivation of the parent's liberty interest in the management of their child. *In re Brock, supra* at 107. The trial court's structural error deprived defendants of the opportunity to defend the allegations before the trial court issued a series of orders that stripped defendants of their right to exercise care and custody of their daughter. *In re PAP, supra* at 155. Because the trial court never properly assumed jurisdiction, all orders based on the wrongful assumption of jurisdiction are void ab initio. *In re Kurzawa,* 95 Mich App 346; 290 NW2d 431 (1980).

## VI. Conclusion

We are deeply troubled that this matter was allowed to proceed in the trial court for as long as and in the manner in which it did.  Based on improperly filed documents filed by an attorney without authority to act on plaintiff's behalf, the trial court, in a fundamental misunderstanding or disregard of its proper role, stripped defendants of their basic constitutional rights to manage and care for their child without state interference.  All of the orders entered completely ignored that, absent a showing of parental unfitness, the state may not interfere with an intact family.

We reverse and remand this case to the trial court with the direction to enter an order of dismissal with prejudice in favor of defendants and vacate all previous orders.  We do not retain jurisdiction.

/s/ E. Thomas Fitzgerald
/s/ Kirsten Frank Kelly

# STATE OF MICHIGAN

# COURT OF APPEALS

---

CLAIRE EVELYN RYAN,

      Plaintiff-Appellee,

v

TIMOTHY J. RYAN and CHRIS RYAN,

      Defendants-Appellants.

FOR PUBLICATION
January 15, 2004

No.  240695
Kent Circuit Court
LC No.  01-09528-DZ

---

Before:  Cooper, P.J., and Fitzgerald and Kelly, JJ.

COOPER, P.J. (*concurring in part and dissenting in part*).

I concur with the majority opinion that this case is moot as it has been dismissed and plaintiff has reached the age of majority.  It is clear from the factual scenario that this is a most unusual case and unlikely to recur.  Because the issues presented on appeal no longer rest upon existing facts or rights, I believe it is unnecessary to address these issues as they have no practical effect on the case.[1]

However, I respectfully dissent from the majority opinion reversing and remanding to the trial court.  This case was voluntarily dismissed.  I fail to see how we can logically reverse a dismissal and then remand the case to the trial court to have the court enter another dismissal.

                      /s/ Jessica R. Cooper

---

[1] *Federated Publications, Inc v Lansing*, 467 Mich 98, 112; 649 NW2d 383 (2002).