2


COPY

STATE OF MICHIGAN

IN THE 17TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF KENT

FAMILY DIVISION

CLAIRE EVELYN RYAN,

    Plaintiff,

vs.                                        Case No. 01-09528-DZ

TIMOTHY J. RYAN and
CHRISTINE RYAN,

    Defendants.
_____/

MOTION FOR DISQUALIFICATION

BEFORE THE HONORABLE PATRICIA D. GARDNER, PROBATE JUDGE

Grand Rapids, Michigan - Wednesday, October 17, 2001

APPEARANCES:

| | |
|---|---|
| Attorney for the Plaintiff<br>MARY L. BENEDICT, P45285<br>4519 Cascade Road, S.E.<br>Grand Rapids, MI 49546<br>616-942-0020 | Guardian Ad Litem for Plaintiff<br>JUDY L. OSTRANDER, P33253<br>700 Commerce Building<br>Grand Rapids, MI 49503<br>616-776-3535 |
| Attorneys for the Defendants<br>THOMAS L. SAXE, P33222<br>CONNIE R. THACKER, P49784<br>Rhoades, McKee, Boer, Goodrich<br>  & Titta<br>600 Waters Building<br>161 Ottawa, N.W.<br>Grand Rapids, MI 49503<br>616-235-3500 | Attorney for the Defendants<br>JON G. MARCH, P17065<br>Miller, Johnson, Snell &<br>  Cummiskey<br>250 Monroe Avenue, N.W., Ste 800<br>P.O. Box 306<br>Grand Rapids, MI 49501-0306<br>616-831-1700 |

Reported by:             Barbara J. Ingram, CER-3509
                           Official Court Reporter
                           616-632-5071

TABLE OF CONTENTS

WITNESSES:                                              PAGE

NO WITNESSES

ARGUMENT BY MR. MARCH ..............................5
ARGUMENT BY MS. BENEDICT .........................10
ARGUMENT BY MS. OSTRANDER ........................14

EDITED OPINION OF THE COURT ......................18


EXHIBITS:               MARKED                   RECEIVED

NO EXHIBITS

2

```
 1              Grand Rapids, Michigan

 2              Wednesday, October 17, 2001 - 10:14 a.m.

 3              THE CLERK:  All rise, please.

 4              THE COURT:  Please be seated.

 5              THE CLERK:  Good morning, Judge Gardner.

 6              THE COURT:  Good morning.

 7              THE CLERK:  Today we're here in the matter of Claire

 8    Evelyn Ryan, Plaintiff, versus Timothy J. and Christine Ryan,

 9    Defendants, Case No. 01-09528-DZ.

10              Present in the courtroom today is Timothy J. and

11    Christine Ryan, Defendants; Attorney Mary Benedict,

12    representing the Plaintiff; Attorneys Jon March, Thomas Saxe,

13    and Connie Thacker, representing the Defendants.

14              THE COURT:  Thank you and good morning.

15              Today was an adjourned hearing that was scheduled to

16    consider a motion for records, a motion to place the minor

17    child in Michigan, and a motion to dismiss filed by the

18    parents.

19              It was also a time to allow the Court to consider the

20    report of the guardian ad litem in the context of these

21    motions.

22              Yesterday, the Court received a Motion to Disqualify

23    this judge that was requested to be heard today at ten o'clock.

24    And the Court will entertain that motion, if there's no

25    objection.
```

3

1          MS. BENEDICT:  Your Honor, as -- as this Court is

2     fully aware, I was out of town from last Thursday, and I was

3     scheduled to return yesterday.  I did change my flights and I

4     came back Monday night.

5          I did see the motion yesterday at my office.  I have

6     not had a chance to prepare for that motion or to even get

7     countering affidavits in that motion.

8          If this Court -- it's not timely filed.  Mr. Saxe,

9     certainly, has known of any -- any issues in regards to this

10    for -- for well over a week.  If something was going to be

11    filed, it could have been filed with appropriate notice and

12    appropriate time to respond.

13         If this Court is entering -- inclined to hear this

14    motion today, then I will -- will argue it.  But I'm not as

15    prepared for it as I would be had I had adequate notice for it.

16         Thank you.

17         THE COURT:  The Court would be inclined to consider

18    the motion.

19         This case, although there is a need to move quickly

20    to make decisions, has been stymied with delays, including this

21    last-minute filing of a Motion to Disqualify.

22         To further delay the matter, I think, would be

23    inappropriate.

24         I do notice that I have a youngster in the courtroom

25    who is a school-ager.  Who is the youngster in the courtroom?

4

1          MRS. RYAN:  Those three children are our other

2     children.

3          MR. RYAN:  They're our children.

4          THE COURT:  All right.  Is there a reason that

5     they're not in school today?

6          MR. RYAN:  We had a long talk last night about that,

7     and it was my inclination not to bring them here, but they

8     convinced me that it was important for them to be here.

9          THE COURT:  I would prefer that the children -- this

10    is an adult matter.  This is not an evidentiary hearing where

11    any child will testify.  It is the Court's strong preference

12    that the children be excused.  All minor children be excused

13    and be asked to sit in the lobby.

14          (At 10:17 a.m., children exit courtroom)

15          THE COURT:  Who will argue the Motion for

16    Disqualification?

17          MR. MARCH:  Your Honor, I will.

18          I'm Jon March.  I filed an appearance as co-counsel

19    for Defendants.

20          THE COURT:  Yes.

21          MR. MARCH:  And at the outset, let me say, we are --

22    we are not making any contention that the notice of this

23    hearing was timely.

24          Ms. Benedict said the motion itself was not timely

25    and, in fact, it was.  It was filed with the court and service

5

1    was made on Monday the 15th, which is within the 14-day period

2    specified by the rule.

3              I don't know that there is any contention otherwise.

4              You indicated that you -- your Honor had received it

5    yesterday.

6              THE COURT:  That's correct.

7              MR. MARCH:  I -- I believe that it was filed on

8    Monday.

9              THE COURT:  Perhaps.  The Court received it

10   yesterday.  My -- my judge's copy.  It was made known to me

11   that it had been filed yesterday.

12             MR. MARCH:  All right.  I -- I believe that we do

13   have a stamped copy indicating that it had been filed on the

14   14th.  So --

15             THE COURT:  Very well.

16             MR. MARCH:  -- I -- I only raise that so that, in my

17   opinion, the timeliness under the court rule is not an issue

18   here.

19             And the Court has already stated its preference that

20   we proceed to have this heard, and I'm prepared to argue it.

21             THE COURT:  You may.

22             MR. MARCH:  And -- and I will commence.

23             The basis for our motion is that there is an

24   appearance of bias and prejudice by the Court.

25             The Defendants, in their papers, have made no

6

1    contention that the Court is actually biased and prejudiced.

2    We have no basis for looking into the Court's mind on that

3    fact.

4         But we do contend and contend strongly, that there

5    has been an appearance of bias that had been -- has been

6    created by what are largely undisputed facts.

7         And the law that we've cited in our brief is clear

8    that an appearance of bias is sufficient grounds to disqualify

9    a judge.

10        And we believe that should happen because what has

11   occurred here goes to the integrity of the judicial process.

12   The -- the facts are, in my opinion, largely undisputed.

13        There was a complaint that was filed in this matter.

14   The complaint, on its face, raises questionable causes of

15   action.

16        At the same time the complaint was filed, there was a

17   motion for an ex-parte order.

18        To the best of the Defendants' knowledge, the

19   complaint was not verified, there was no accompanying

20   affidavit, there was no sworn testimony to support the

21   complaint or the ex-parte motion that was before the Court.

22        If there is such sworn testimony or sworn affidavits,

23   the Defendants have never seen them.

24        The Court, nevertheless, entered an order, an ex-

25   parte order.  The order on its face says that it's based on a

7

1    verified petition and affidavit.  Why it says that if, in fact,

2    there was none, we don't know.

3            On October 1st, accompanying an amended complaint and

4    an amended motion for an order, we received an affidavit from

5    Ms. Adele McGinn-Loomis.  That affidavit, although not received

6    by the Defendants until October 1st, was dated September 20.

7            The last paragraph of that affidavit says that this

8    information in the affidavit was verbally provided to Your

9    Honor, and given the date of that, September 20th, one day

10   after the complaint had been filed, and one day after the ex-

11   parte order had been entered, it is a reasonable presumption to

12   conclude that that information had been provided on the 19th,

13   at or about the time that the ex-parte order was entered.

14           In a conversation that Mr. Saxe, co-counsel, had with

15   the -- Attorney Mary Benedict, representing the Plaintiff,

16   Ms. Benedict indicated to Mr. Saxe that it had been Ms. McGinn-

17   Loomis who had provided the information to the Court.  And

18   there is an affidavit on file from Mr. Saxe to that effect.

19           Such an ex-parte communication is clearly

20   inappropriate.

21           In this particular matter, Ms. McGinn-Loomis is not a

22   bystander, she's not a -- a -- not a disinterested witness.

23           As the affidavits that we presented from Mr. and Mrs.

24   Ryan and others indicate, Ms. McGinn-Loomis is a central player

25   in this whole episode involving the Ryan family in a very

8

1    essential way.

2           Ms. McGinn-Loomis is also an employee of this court.

3           In that position, she has what I will call back-door

4    access to the court in a way that some other person on the

5    street would not have.

6           You put that fact together with the fact that she's

7    an interested party, and that she provides an affidavit, the

8    affidavit itself contains several paragraphs that are

9    pejorative to the Ryans.  And -- and the evidence that we have

10   that that was submitted to the Court, together with the

11   evidence that there does not appear to have been any sworn

12   testimony to support the Court's issuance of the ex-parte

13   order, and all of that together creates an appearance of bias

14   and an appearance of impropriety.

15          None of us know what, in fact, Ms. McGinn-Loomis may

16   have said to the Court.  The affidavit says the information

17   above was presented.  It doesn't say that anything else was

18   presented and that, of course, is the whole problem with ex-

19   parte communication is that no one really knows what went in to

20   the Court's mind, what is in the Court's mind in terms of the

21   Court's ability to hear the matter impartially without any bias

22   and without any prejudice.

23          As I stated at the outset, we do not know if that

24   actual bias or prejudice exists.

25          But without any question, there is an appearance of

9

1    such impropriety.  And that appearance here is made more strong

2    and -- and creates an even greater undermining of the judicial

3    process when it is coupled with the fact that Ms. McGinn-Loomis

4    has told the Ryans -- or Mr. Ryan on an -- a separate occasion,

5    that she is willing to use her influence with the -- with the

6    Court, and that she has told the Plaintiff in this case that

7    that's what she would do.

8            Whether, in fact, she has any influence with the

9    Court, we don't know.

10           But, in fact, she has engaged in activity which is

11   inappropriate and which we respectfully submit, your Honor,

12   creates such an appearance of bias and prejudice, as well as

13   impropriety, that the only thing for this Court to do is to

14   disqualify itself from further proceedings and to transfer this

15   case to another judge.

16           And we respectfully request that that be the result.

17           THE COURT:  Thank you.

18           Ms. Benedict, do you wish to make any argument?

19           MS. BENEDICT:  Your Honor, first off in regards to

20   service of the -- the motion.  It was served at my office at

21   4:50 p.m. on Monday afternoon.

22           So, yes, it was filed on -- or apparently at least

23   served in my office by the end of the business day, barely, on

24   Monday.

25           I'd like the -- the record to reflect that.

1             Your Honor, also, I would like the record to reflect

2    that Mr. Saxe informed me well over a week ago when we talked

3    about this issue, that he was not going to file a Motion for

4    Disqualification because he felt that you were not biased and

5    that you could hear this motion -- or hear this -- this case.

6    And that he felt you were a fair judge.

7             So I find it interesting that on the eve of further

8    court proceedings and after the Court of Appeals denies a leave

9    for appeal and -- and a stay of proceedings, that then this

10   motion is filed.

11            It -- it just seems to me that there's some judge

12   shopping going on.  They don't like that -- that things aren't

13   -- haven't necessarily gone their way, not that anything's

14   really happened yet.  So they want to see if they can get a

15   better result with somebody else.

16            I -- I'm sorry, I don't think we use the court system

17   that way.

18            Your Honor, I -- I -- I do not believe this Court is

19   biased.  Certainly, I don't believe there's even been an

20   appearance of bias.

21            This issue came as a result of calls that Ms. -- that

22   my client, Ms. Ryan, made asking for help.  We were under --

23   under a -- literally a gun of trying to get help and prevent

24   her from getting on an airplane.

25            We were trying to do that.  I was trying to get

1       paperwork done to help my client.

2               I spoke with this Court, as this Court knows, in an

3       effort of trying to streamline and get paperwork done.

4               Ms. Loomis provided information because she had the

5       information because Ms. Ryan called her asking for help.

6               I had previously spoken to Ms. Ryan.  But she is the

7       -- the person that Ms. Ryan called begging for help and the

8       phone went dead in that conversation.

9               Your Honor, the information that she provided is what

10      is spelled out in that affidavit.  I provided that affidavit --

11      we drafted that so that there was no problem, the record was

12      clear on what occurred.

13              I think that that was an appropriate thing to do.

14      And, certainly, everyone was fully aware of that.  There was no

15      -- no hidden agenda by anybody.

16              The fact that she works for the court doesn't give

17      her any influence.  She doesn't work for Your Honor, she works

18      in the court clerk's office.  She's not in your courtroom on a

19      regular basis.  She's not even in a courtroom.  She's in the

20      court clerk's office.  She accepts documents, she does filing,

21      she does what the court clerk's office does.

22              I don't believe that she has any control.  I don't

23      think anybody in the court's clerk's -- court clerk's office

24      has control over the judges, over the staff of the judges.

25      Certainly, I've never witnessed anything to that effect.

                                    12

1           And if we follow that line of reasoning, well, then

2       nobody in Kent County can hear this case because of her working

3       at the court, as well as the fact that Mr. Ryan is an attorney.

4       Well, then, who can hear the case?  I mean, if we're following

5       their line of reasoning that the fact that somebody's a court

6       employee that's a potential witness in a case, dis --

7       disqualifies a judge, well, then, we've got the same problem

8       with Mr. Ryan and -- and then where do we go?

9           Your Honor, quite frankly, I think that what they're

10      trying to do is just overwhelm us with paperwork, and the --

11      and the personal attacks.  The -- the running around town

12      spreading personal attacks about myself, as well as other

13      persons involved in this case, all that is is an effort to try

14      to get us to walk away from the case.

15          And, quite frankly, I've been at the point where I've

16      almost gone -- I've almost walked away.  But I can't do that

17      for my client.  This client -- this case is about a soon-to-be-

18      17-year old girl and what's in her best interests.  And -- and

19      what -- what are her needs and what are her rights.  That's

20      what this case is about.

21          And I think that we need to keep that in focus.  And

22      I believe that this Court can do that.

23          Your Honor, I don't believe, again, that there is any

24      influence.  Certainly I haven't been able to respond to these

25      self-serving affidavits that are part of this case -- that have

13

1    been filed as part of this motion.

2             I would certainly like to submit that those

3    affidavits certainly try to spell out Mr. Ryan's position.

4             Your Honor, it -- it's frustrating to me.  But, your

5    Honor, I think we need to keep the focus on what's best for

6    this child.

7             And -- and I believe that this Court is not biased

8    and that this Court is willing to hear all of the evidence in

9    this case.

10            This Court appointed a GAL to investigate it and to

11   look into this matter.  I think that that certainly is an

12   appropriate step.  Certainly something I wanted to see happen.

13            That GAL has made a report.

14            And -- and, your Honor, I would ask that the -- the

15   Motion for Disqualification be denied.

16            Thank you.

17            THE COURT:  Ms. Ostrander, do you wish to make any

18   statement on the issue?

19            MS. OSTRANDER:  Briefly.

20            Your Honor, in summary, I would concur with

21   Ms. Benedict.

22            I believe that Ms. Benedict was operating under

23   exigent circumstances.  We had a young girl who was being

24   removed from the State of Michigan against her wishes.  She was

25   in the process of seeking legal advice.

14

1          I know from talking with her that she talked to not

2     one attorney, but two attorneys.

3          However, she considered Ms. Benedict her attorney.

4          Time did not allow for formal -- formal pleadings to

5     be prepared.  In fact, the Defendants made it impossible for

6     their daughter to proceed with her wishes to go to the court to

7     seek her remedy.

8          Ms. Benedict didn't have time to get verified -- or

9     to prepare verified proceedings, or to -- to file formal

10    affidavits.

11         I believe that in light of the exigent circumstances,

12    her actions were appropriate.  The Court's actions were

13    appropriate.

14         And, quite frankly, I have never known Ms. Loomis to

15    have any great deal of influence in anybody in -- on any

16    person, judge, or office in this building.  She is merely a

17    clerk.

18         So I would respectfully ask that the motion be

19    denied.

20         MR. MARCH:  May I respond, your Honor?

21         THE COURT:  You may.

22         MR. MARCH:  Your Honor, Ms. Benedict says that what

23    this case is about is the best interests of the Plaintiff and,

24    ultimately, I would add, the Ryan family.  And that's true,

25    ultimately.

15

1              But that's not what this motion is about.

2              What this motion is about is the integrity of the

3      judicial process.  Whatever else we are here today, this is a

4      court of law.  And the Court and Counsel are obligated to

5      follow the requirements of law.

6              In this particular case, Ms. -- Ms. Benedict says

7      that this is merely an effort to overwhelm people with

8      paperwork.  She talks about personal attacks on her as an

9      attorney.  I don't know anything about that.

10             The -- the material that is in our papers is all

11     there for a purpose.  It's not meant to overwhelm anyone with

12     its volume.  It is meant to specifically put forth the facts

13     and the law behind this motion.  And we believe it does.

14             And I've heard nothing from Ms. Benedict nor from

15     Ms. Ostrander that in any way attacks the factual basis for our

16     motion.

17             Ms. McGinn-Loomis may or may not have ultimate

18     influence with this Court.

19             But I think it is beyond question that if somebody

20     off the street walked in and said, Judge, I want to be heard on

21     an ex-parte motion, I don't know of any judge, I do not know

22     Your Honor, I've not had personal experience with you, but in

23     28 years, I don't know of any judge who would say, yes, come on

24     in and I'll hear what you have to say.

25             The difference is that here Ms. McGinn-Loomis is an

16

1    employee of this court.  And regardless of anything else,

2    regardless of Ms. Ostrander's verification and attesting to

3    Ms. McGinn-Loomis, it is the appearance that we're dealing with

4    here.  And the appearance of impropriety is overwhelming, and

5    the appearance of bias.

6         I have no idea, as I've said already twice, whether

7    the Court, in fact, has a bias or a prejudice.

8         But what has happened here, through whatever

9    circumstances, and I am willing to believe everything the Court

10   did was well-intended.  I'm willing to believe that everything

11   Counsel did was well-intended.

12        I'm not willing to make that same statement in

13   reference to Ms. McGinn-Loomis.

14        There is a question, well, no judge can hear this

15   case because she works in this courthouse.

16        I would say no judge who Ms. McGinn-Loomis has gone

17   to and talked to about this case can hear it.  But absent that,

18   any of the other circuit judges can hear this case.

19        Ms. Benedict says, well, Mr. Ryan, because he's an

20   attorney, therefore, all the judges are disqualified.

21        The significant difference is that Mr. Ryan has not

22   had an ex-parte communication with Your Honor or with any other

23   judge.

24        You put this all together and this is -- this is a

25   motion that has merit and that Your Honor should disqualify

17

1    herself from hearing this case.

2         THE COURT:  Thank you.  The Court will enter its

3    ruling on the record.  I do reserve the right to modify the

4    opinion as to information, law, and court rules as may be

5    applicable.

6                          *  *  *

7                (Edited Opinion of the Court)

8                          *  *  *

9         To file a Motion to Disqualify a judge is very

10   serious business.  Judges are elected officials that serve and

11   are required to be impartial hearers of the facts.

12        In this case, the Court will detail its contacts with

13   Adele Loomis, with whom the Court has had, throughout its

14   tenure on the bench, little to no contact.  She's not a friend.

15   She's not an acquaintance, she's a person who works in the

16   clerk's office.

17        I did receive a telephone call from Ms. Loomis at my

18   home over the dinner hour on September 19th.

19        The length of the conversation I would estimate to be

20   no more than two minutes.

21        The discussion was primarily to apologize for

22   interrupting me at home and to request whether my home number

23   could be provided to Ms. Benedict.

24        She further indicated that she was aware of the case

25   as Claire Ryan's boyfriend's mother.

                              18

1          That was the extent of my conversation.  A brief

2     conversation to advise me of an alleged emergency situation and

3     whether Ms. Benedict could receive my home number.

4          Emergencies and ex-parte orders are in and of

5     themselves problematic.  That is why the bench rarely issues

6     them and attorneys in our legal community are sensitive to the

7     fact that they should be brought only in the most severe of

8     emergency situations.  Ex-parte orders by their nature require

9     ex-parte communication.  These communications do not disqualify

10    the judge from hearing the case.  The other information from

11    Ms. Loomis which I received include reviewing an affidavit

12    dated September 20th, submitted by Ms. Benedict, and also an

13    affidavit that was submitted to the Court in the context of

14    receiving a PPO against Mr. Ryan and Mrs. Ryan.

15         This Motion for Disqualification is requested

16    pursuant to MCR 2.003(1), alleging the judge is personally

17    biased or prejudiced for or against a party or attorney.

18         Ms. Loomis is not a party to the action.  She is not

19    a collateral party in that there has never been a request in

20    any pleading that I have reviewed to place Claire Ryan with

21    Ms. Loomis.  No one suggests or requests the placement of

22    Claire Ryan with Ms. Loomis.

23         There is no order for temporary placement with

24    Ms. Loomis nor has one ever been requested.

25         In fact, all parties agree, the Ryans, Claire Ryan's

19

1    attorney, and the Guardian Ad Litem, that such a placement

2    would be inappropriate.

3            One must then look to the orders that the Court

4    entered to determine if the two-minute phone conversation

5    authorizing Ms. Benedict to contact me at home for the

6    presentation of an emergency ex-parte order influenced the

7    Court for Ms. Loomis, although she's not a party, or against

8    the Ryans in any way.

9            The order entered by the Court on September 19th

10   preserved the status quo.  It was intended to preserve the

11   child's jurisdiction within the State of Michigan, to return

12   the child to Grand Rapids in a safe location at the Bridge, and

13   to schedule an emergency hearing.

14           The Court didn't rule against the Ryans, it didn't

15   rule against Claire Ryan, it ruled for no one.  It ruled to

16   preserve the status quo when emergency allegations had been

17   made that the child was to be removed from a jurisdiction when

18   she sought to bring forward an emancipation petition,

19   guardianship hearing, or other proceedings.

20           The ex-parte order preserved the status quo to allow

21   the parties to be heard.

22           Could this possibly have the appearance of prejudice

23   or bias to preserve the status quo?

24           The Court finds that no appearance of impropriety,

25   bias or prejudice exists in the issuance of an order to

20

1     maintain the status quo, and to schedule an emergency hearing.

2           The second order entered by the Court appointed a

3     guardian ad litem for Claire Ryan, Attorney Judy Ostrander.

4           Could the two-minute conversation with Ms. Loomis to

5     pass on a home number, or the reviewing of the affidavits in

6     any way have an impact on the Court's order to appoint a

7     guardian ad litem to determine the child's position in the case

8     in order to rule on the Motion to Dismiss, the motion to move

9     Claire Ryan back to Michigan, and the motion for release of

10    records that was to be before the Court?

11          The Court finds that there is no appearance of

12    impropriety, bias, or prejudice to any party in ordering that a

13    guardian ad litem be appointed for the child before ruling on

14    the substantive issues and matters before the Court.

15          The second order also stayed the ex-parte order

16    requiring the return of Claire Ryan to Grand Rapids from the

17    Detroit Metropolitan area.

18          Now could there be any appearance of impropriety as a

19    result of that phone call in the staying of that order, which

20    also expanded the preservation of the status quo, since, in

21    fact, Claire Ryan had been moved into a placement in Utah?

22          This was a request, in fact, made by the Ryans.

23          I find that there is no appearance of impropriety in

24    entering this stay allowing Claire Ryan to remain in her

25    placement and preserving the current status quo until the

1    guardian ad litem report was received, heard, and the motions

2    were argued.

3            The Court finds that there is no personal bias and

4    there further is no appearance of bias or prejudice in this

5    matter or in the orders that have been generated by the Court.

6            In fact, if there was bias or the appearance of bias,

7    that would have been supported if I had signed a second ex-

8    parte order presented by Ms. Benedict requesting that I order

9    the child to be returned from Utah.

10           The Court declined to sign that ex-parte order.

11           The Court also declined to sign an ex-parte order

12   submitted by Mr. Saxe dismissing the action.

13           Would the argument for the appearance of impropriety

14   or the appearance of bias or prejudice be bolstered if the

15   Court had entered the PPO requested by Ms. Loomis against the

16   Ryans?

17           The Court declined to enter that order.  And I would

18   argue because the Court is fair and impartial and considers

19   only the facts of the case, which have yet to be fully

20   presented to the Court.

21           I have yet to consider the substantive requests of

22   the respective parties.

23           The Court has only continued the status quo which has

24   not prejudiced either party.

25           It appears to the Court that the Motion for

22

1     Disqualification, filed one day before the hearing on the

2     substantive matters, was meant to further delay the case.  This

3     case was presented to the Court of Appeals who declined to stay

4     the proceeding.  A Motion to Dismiss is pending.  I find the

5     Motion for Disqualification completely without merit.  The

6     motion is denied.

7          The pleadings indicate that if this matter is to be

8     denied, there will be an appeal to the chief judge as allowed

9     by the court rule.

10          The Court, therefore, will adjourn argument on the

11    substantive matters, which were to be heard today, for one

12    week, Thursday, from 3:00, excuse me, October 24th, from

13    11:00 a.m. until noon.  The pending motions include a request

14    for records, placement of Claire Ryan in Michigan, and motion

15    to dismiss, along with considering the guardian ad litem report

16    and recommendation.

17          I believe that this is more than enough time for you

18    to pursue the appeal to Judge Buth, since you are able to raise

19    this Motion to Disqualify in a very short period of time.

20                              * * *

21

22          THE COURT:  So the Court will adjourn until

23    October 24th, 2001, 11:00 a.m. to noon.

24          MS. BENEDICT:  Your Honor, you said Thursday the

25    24th, but Thursday is the --

23

```
 1                    THE COURT:  Is -- am I wrong?

 2                    MS. BENEDICT:  -- Wednesday is the 24th.

 3                    THE COURT:  Wednesday.  I meant to just adjourn it

 4         for one week, believing that that would be sufficient time for

 5         the appeal to Judge Buth to proceed.

 6                    MR. MARCH:  Your Honor, may I be heard?

 7                    THE COURT:  Do you have a question?

 8                    MR. MARCH:  I -- I have a question, then I have a

 9         request.

10                    You are correct that our papers indicate that should

11         Your Honor deny the motion, which you have, that we would ask,

12         pursuant to the court rule, that it be submitted to the chief

13         judge.

14                    I would, however, like the opportunity to confer with

15         my clients, based on what the Court has said here today, before

16         we officially make that request.

17                    I don't know if that impacts the Court's decision if

18         we were not to do that, so that you would proceed today or

19         whether in any event you're going to put it off for a week.

20         But I'd like to confer with -- with my clients for five

21         minutes, if we can do that.

22                    THE COURT:  You certainly may.

23                    MR. MARCH:  I would also like to state on the record,

24         your Honor, that there was no intent in filing this motion for

25         delay.  The Court, obviously, disagrees with the -- the basis
```

24

1      for the motion.

2            But I'm representing to you as an officer of the

3      court that that was not filed for delay purposes.

4            THE COURT:  Thank you.  We'll adjourn for five to ten

5      minutes.

6            MS. BENEDICT:  Thank you, your Honor.

7            THE COURT:  Thank you.

8            (At 10:48 a.m., recess taken)

9            (At 10:59 a.m., court reconvened)

10           THE CLERK:  All rise.

11           THE COURT:  Please be seated.

12           MR. MARCH:  Your Honor, I have conferred with my

13      clients and with co-counsel, and we have determined that we

14      will ask that this be submitted to Judge Buth.

15           As I read the court rule, sub-part (C)(3)(b), it

16      indicates that the court submits the challenge.  And I'm not

17      sure, precisely, the procedure.  But because we're under a very

18      short time period here, I think that we -- it probably behooves

19      us all to understand exactly what will happen in that regard.

20           It's been my previous experience, albeit limited,

21      that the challenged judge refers the matter to the chief judge.

22           I guess what I'm really asking is that we all be on

23      the same page in terms of what we do here.

24           THE COURT:  I have never done this either.  So, that

25      does appear to be the direction from the court rule.

1           The Court would be inclined to provide to Judge Buth

2       your appearance, motion, affidavits, the order of the Court,

3       and a transcript of the proceeding so that Judge Buth may

4       review the arguments of Ms. Benedict, Ms. Ostrander, and also

5       your own argument and rebuttal.

6           MR. MARCH:  And the -- and the Court's opinion, I

7       think Judge Buth should have that.

8           THE COURT:  Yes.  Yes.  Very well.

9           MR. MARCH:  If that can -- can be done.  And if

10      there's any question of that, we'll order that -- the

11      transcript of today's hearing.

12          THE COURT:  I think that you do have -- are

13      responsible for paying for the transcript.

14          MR. MARCH:  Yes.  In any event, we will, your Honor,

15      because I think all that should be before Judge Buth.

16          THE COURT:  All right.  Very well.

17          MR. MARCH:  And so if we can do that, we will assume

18      then that the Court will forward those papers.  It is possible

19      that we will submit a supplemental brief in -- in light of what

20      the Court's statements were.  The Court can imagine some of

21      that was unknown to us and no way we would have to know that.

22          So we will probably submit a supplemental brief which

23      will be served on Ms. Benedict, Ms. Ostrander, and also a

24      courtesy copy to Your Honor.

25          MS. BENEDICT:  Your Honor, number one, I would object

26

1    to further evidence being presented.

2            The -- the issue -- from the -- the moving party

3    anyway.  Certainly, I should be given a response -- a chance to

4    file a written response to it.

5            But I think for -- for the moving party to be able to

6    now come up with some other documents to file, I won't even be

7    given a chance to respond yet again for Judge Buth to hear it.

8            Either we set a parameter of response -- we've --

9    your Honor, I just don't think that the Court should allow more

10   responsive pleadings in regards to this issue, other than to

11   allow me to file an answer, given the untimeliness of -- of

12   this motion being filed for today.

13           Or -- or nobody files anything and we only use the

14   court record as it is.

15           MR. MARCH:  With all respect, your Honor, I believe

16   that really is a matter for Judge Buth, who is now going to be

17   deciding this.

18           The -- I in no way am contesting Ms. Benedict's right

19   to file a response to our papers, which she did not have the

20   opportunity to do.

21           But there have been things that have been said by the

22   Court of a factual nature that are inconsistent with what is in

23   the record.  And the Court has -- has stated reasons as to why,

24   in the Court's opinion, our motion was without merit.

25           We respectfully disagree and I think we should have

27

1    the opportunity to tell Judge Buth, putting all of this

2    together, why we think the motion should be granted.

3                THE COURT:  Very well.  I -- I will allow you to file

4    a supplemental response.

5                I did struggle with -- the Court intended to clarify

6    the one very brief communication, and I struggled -- well, you

7    know, was it appropriate to do that.  For -- you make the

8    argument after -- and so I -- I made the decision to include

9    that in my remarks today.

10               That being the case, you -- you do have the right to

11   tell Judge Buth how you perceive that information and make

12   further argument.

13               That would certainly apply to the guardian ad litem,

14   if you wish.  I'm not saying you need to.  If you want to, you

15   may.  And -- and I will pass that information along to Judge

16   Buth.

17               If there are any additional pleadings, they would

18   need to be submitted by Friday at 5:00, because the Court would

19   pass on the information to Judge Buth and ask that he have the

20   opportunity to consider it over the weekend, if he wishes to,

21   or Monday or Tuesday before this scheduled Wednesday hearing

22   date.

23               So I am going to allow for additional filings through

24   Friday at 5:00.

25               Actually, why don't I say Friday at 4:00.  That way,

28

1    I'll have the chance to make sure that he receives it before

2    the close of the day.

3            MS. BENEDICT:  Your Honor, I don't mean to beleaguer

4    the point, and I really don't mean to be a thorn.  But I can

5    tell you what's going to happen.  At 4:50 on Friday afternoon,

6    I'm going to get something served from them, and I won't have a

7    chance to respond.  Just like what happened today.  I mean, if

8    they're going to file something, can't I at least have a day to

9    respond to it?

10           MR. MARCH:  I've --

11           THE COURT:  No.  I've -- I've ruled.  All of you have

12   the information relative to the Motion for Disqualification,

13   the information, and I think each of you -- that there's not a

14   need for further responsive pleadings to each other's position.

15   But each of you can well articulate your own position on the

16   issue.

17           And I would like all pleadings submitted by Friday at

18   4:00.

19           MS. BENEDICT:  Your Honor --

20           MR. SAXE:  May it please the Court, your Honor?  I

21   have two matters before the Court.

22           One is -- I've been remarkably silent today.  I don't

23   want the Court to imply anything either against me or for me in

24   that matter except to say this.  I was ready to proceed today.

25   Any implication that there's a delay tactic on my part or

29

1      Mr. Ryan's part, I think, is improperly placed by Ms. Benedict.

2      There's -- there's no reason for us to have delayed this other

3      than Mr. March's motion, which I think the delay then makes

4      sense.

5              The second thing is, before the Court came on the

6      bench, Ms. Ostrander presented a guardian ad litem report.  And

7      before such time as there's some testimony to provide a -- a

8      foundation for that, I'd ask that that be returned to her and

9      taken from the court file until such time as that evidentiary

10     hearing begins.

11             Thanks.

12             THE COURT:  The Court would deny that request.  She's

13     been appointed as guardian ad litem.  It's properly filed and

14     will remain in the court file.

15             MR. MARCH:  Your Honor, just so I'm -- I'm clear.

16     Our briefs should be submitted to the -- to the Court, to Your

17     Honor, and then the whole package will go to Judge Buth as

18     opposed to us submitting the brief to Judge Buth?

19             THE COURT:  Correct.  As I understand the court rule,

20     I need to submit it to Judge Buth.

21             And, so I will prepare a cover letter saying that

22     there's been a challenge to my denial on the Motion for

23     Disqualification, I'm respectfully requesting that he review

24     it, and issue a de novo decision prior to our adjourned hearing

25     date.

30

```
 1              And then I would enumerate the attachments, which

 2        will be all pleadings associated with the motion, the

 3        transcript, and any supplemental responses that you wish to

 4        have Judge Buth receive, in light of the Court's comments

 5        today.

 6              Those need to be filed, an original with the clerk,

 7        but I need the copies in my office because you understand

 8        there's a delay.

 9              MR. MARCH:  Sure.

10              THE COURT:  And so in order to properly have it

11        submitted to Judge Buth, which I understand is my

12        responsibility, I need copies in my office, in addition to the

13        clerk's office, by Friday at 4:00 so that those may be received

14        by him.

15              MR. MARCH:  Thank you, your Honor.

16              THE COURT:  All right.  Anything else?

17              MS. BENEDICT:  Thank you, your Honor.

18              MS. OSTRANDER:  Thank you, your Honor.

19              MR. SAXE:  Thank you, your Honor.

20              THE COURT:  Thank you very much.

21              (At 11:08 a.m., court adjourned)

22
```

31

STATE OF MICHIGAN )

                     ) ss

COUNTY OF KENT    )

        I, Barbara J. Ingram, Official Court Reporter, certify that this transcript, consisting of 32 pages, is a complete, true, and correct transcript of the proceedings and testimony taken in this case on Wednesday, October 17, 2001.

Barbara J. Ingram, CER-3509
Official Court Reporter
616-632-5071

Dated:  October 18, 2001
Grand Rapids, Michigan