6

EXHIBIT B

# Memo

To: Mary Hollinrake
      Kim Foster
Fr: Mary K. Kelly
Dt: August 20, 2002

**CONFIDENTIAL**

RE: Adele McGinn-Loomis / Judicial Assignment in Ryan v Ryan, #01-09528-DZ

James Brady and Jon Muth filed a complaint with Kim Foster regarding Adele McGinn-Loomis' activities in connection with the Ryan case. Briefly, Ryan vs Ryan is an action brought by Claire Ryan, a minor, against her parents, Tim and Chris Ryan, for "divorce." At the time the complaint was filed, Claire Ryan was the girlfriend of Adele's son Ryan; Tim Ryan is a member of Miller Johnson. Judge Gardner was assigned to the case after signing an order the night before the case was filed, and Adele had some type of contact with Judge Gardner in connection with securing that order.

Jim and Jon are highly critical of Adele's involvement in the case, summing up their complaint as follows:

> **[I]t appears to us that this court employee who had a clear interest in this case, worked after normal business hours, hand picked the judge she wanted on the case, secured the assignment of that judge by circumventing the normal assignment process, had an ex parte communication with that judge, and based on that ex parte communication convinced that judge, with no motion, no complaint, no sworn testimony whatsoever, to sign an order that required the police to take a child away from her parents.**

They make these observations in support of their allegations:

1) There was an after hours, ex parte contact between Adele and Judge Gardner;
2) Judge Gardner signed an order prior to the filing of a complaint;
3) The order, signed September 19, 2002, refers to a motion and affidavit that were dated September 20, 2002;
4) The affidavit was not filed until September 28, 2002;
5) Adele's affidavit ends with the statement that "this affidavit is consistent with the information provided verbally to the Honorable Patricia D. Gardner."
6) Allegedly, either prior to or during the course of these proceedings, Adele made statements to Claire implying that she knew the judges closely, and/or that Adele got the judge Adele wanted to get.

Mandy and I met with Adele and her steward on August 15, 2002. In response to our questions, Adele gave the following explanation. She had contacted Mary Benedict on

September 19, 2001, after Claire called and told her that Claire's parents were flying her to an out-of-state boarding school. Adele was well acquainted with Claire's problems with her parents through Claire's relationship with Ryan. Adele was pretty frantic, and called Mary Benedict (Claire had met with Mary previously to discuss filing for emancipation) to see if Mary could get an order to return Claire to Grand Rapids.

Per Adele, Mary asked her to see if she could find an available judge. Adele called Judge Hillary and left a message for him to call Mary Benedict, and then called Judge Gardner's reporter, Barb Ingraham, to ask Barb if she would call Judge Gardner and ask Judge Gardner to call Adele at her home. Adele couldn't remember if she called Judge Gardner or if Judge Gardner called her. Adele asked if she could give Mary Benedict Judge Gardner's home phone number so Mary could discuss Claire's emergency situation. Adele insisted that she did not discuss any details with Judge Gardner. Adele then called Mary Benedict, who presumably contacted Judge Gardner.

That was the extent of Adele's involvement with the order. All of this took place after hours. Adele made the telephone calls from her home.

The following day, Adele and Karen Mys were waiting on the counter when Mary Benedict came in to file her complaint. Adele recalls discussing the judicial assignment with Karen Mys and Mary Benedict, but does not recall who actually assigned the judge. Adele believed that she and Karen opened the case together.

Later that day, Adele petitioned for a personal protection order against the Ryans. The PPO was assigned to Judge Gardner. Adele believes that she mentioned the <u>Ryan</u> case to Marie Koetje, but did not request that Judge Gardner be assigned to the PPO.

Adele insisted that she did not tell Claire or anyone else that things would go in Claire's favor because of Adele's employment. She also observed that she had no contact with Claire after Claire's last phone call, so she could not have told Claire that "they got the judge Adele wanted." Claire did in fact leave the state before Judge Gardner's order could be carried out, and Claire was not allowed to have contact with anyone other than her parents while she was out of Michigan.

Regarding the affidavit, Adele does not remember when she signed it, other than not before the case was filed. Adele said she did not read it carefully before she signed it. Adele said that the last line was not accurate, that it should have said that her statements were consistent with what she had told Mary the night the order was entered.

Kim Foster and I met later that day with Karen Mys. Karen did not remember opening the case, but did say that she and Adele worked together on occasion at the counter, and that they might have opened this case together. Karen did not remember any conversation about judicial assignment. Karen did recall the situation with the Ryans as Adele had discussed it with her on a number of occasions, but their conversations about the Ryans were of a personal, rather than a work-related, nature.

Kim and I also met with Marie Koetje. Marie didn't have clear recall of Adele's PPO case. She remembers talking to Adele about the petition but couldn't remember any specifics. Marie did say that she probably had Judge Gardner assigned to the case because of the Ryan case, based on her understanding that the same person (Tim Ryan) should have all of his/her cases assigned to the same judge. Marie thinks she took the paperwork to Karen Mys to open the case as Karen was doing PPOs at that time, but doesn't remember talking to Karen or Adele about the judge assignment.

Finally, I spoke with Mary Benedict over the phone regarding the order and subsequent filing of the Ryan complaint. Mary had already met with Claire to discuss an emancipation action well before Adele called her about Claire's being taken out of state. Mary remembers that it was after hours, and understood that Adele was calling from her home. Adele described Claire's predicament, and asked Mary what Mary could do to stop Claire from leaving the state. Mary said she specifically told Adele that she wouldn't call a judge at home, and did not ask Adele to call a judge for her. Adele said that she would try to get a hold of a judge, and would let Mary know. Adele didn't refer to her job, didn't hold herself out as a deputy clerk with some insider's connections, nor did Adele indicate that she was acting in an official capacity. Mary likened Adele's action to that of a frantic friend or family member, not related to her employment.

Mary said that, after speaking with Judge Gardner, she had no further contact with Adele that night. Judge Hillary did call Mary that evening in response to the message Adele had left for him at his home.

Mary recalls that Adele and Karen Mys were both at the counter when she came in to file her complaint. Mary said that she had typed Judge Gardner's name on the pleadings because Judge Gardner had signed the order the night before, and Mary understood that Judge Gardner's prior involvement required that the case be assigned to her. Mary said she told Adele and Karen that the case should be assigned to Judge Gardner. Mary said that she, Adele, and Karen discussed the case at the counter, but thinks that Karen Mys did most of the work in opening the case.

Regarding the affidavit, it should be noted that the issue of Adele's communication with Judge Gardner was raised during hearings on a motion to have Judge Gardner disqualify herself from the case. Judge Gardner was adamant that she had a brief conversation with Adele that was limited to Adele apologizing for calling the judge at home and asking if she could give Mary Benedict the judge's home phone number.

Based on all of the above, I don't think that the very serious concerns raised by Mr. Brady and Mr. Muth are founded. There is no indication that Adele was acting in an official capacity when she contacted either Judge Hillary or Judge Gardner. Both Adele and Judge Gardner insist that there was no discussion of the details during their telephone conversation, and I've found nothing to contradict their statements. Therefore, for whatever reasons Judge Gardner signed the order, it was not based on an ex parte communication with a deputy clerk who took advantage of her position to achieve her desired result. The subsequent assignment of the case to Judge Gardner was at Mary

Benedict's direction, based on her belief that such was required due to Judge Gardner having signed the order the night before.

That is not to say, however, that Adele's conduct in this matter was in all ways appropriate. I am concerned with the fact that Adele "mistakenly" signed an affidavit which she now claims to be inaccurate, as that affidavit is now part of a public record that we maintain. Needless to say, her misrepresentation has created problems for our office, for Judge Gardner, and potentially others involved in the case. In addition, her protests notwithstanding, it's highly likely that Adele "talks up" her position with our office vis-à-vis its connection to the court. I don't see, however, that Adele's probable penchant for puffery would or could have had an impact on how this case was handled.