# 5



STATE OF MICHIGAN

IN THE 17TH JUDICIAL CIRCUIT COURT FOR THE COUNTY OF KENT

FAMILY DIVISION

CLAIRE EVELYN RYAN,

    Plaintiff,

vs.                                      Case No. 01-09528-DZ

TIMOTHY J. RYAN and
CHRISTINE RYAN,

    Defendants.
_____/

MOTION FOR DISQUALIFICATION

BEFORE THE HONORABLE PATRICIA D. GARDNER, PROBATE JUDGE

Grand Rapids, Michigan - Wednesday, October 17, 2001

APPEARANCES:

| | |
|---|---|
| Attorney for the Plaintiff<br>MARY L. BENEDICT, P45285<br>4519 Cascade Road, S.E.<br>Grand Rapids, MI 49546<br>616-942-0020 | Guardian Ad Litem for Plaintiff<br>JUDY L. OSTRANDER, P33253<br>700 Commerce Building<br>Grand Rapids, MI 49503<br>616-776-3535 |
| Attorneys for the Defendants<br>THOMAS L. SAXE, P33222<br>CONNIE R. THACKER, P49784<br>Rhoades, McKee, Boer, Goodrich<br>  & Titta<br>600 Waters Building<br>161 Ottawa, N.W.<br>Grand Rapids, MI 49503<br>616-235-3500 | Attorney for the Defendants<br>JON G. MARCH, P17065<br>Miller, Johnson, Snell &<br>  Cummiskey<br>250 Monroe Avenue, N.W., Ste 800<br>P.O. Box 306<br>Grand Rapids, MI 49501-0306<br>616-831-1700 |

Reported by:                Barbara J. Ingram, CER-3509
                                  Official Court Reporter
                                  616-632-5071

## TABLE OF CONTENTS

WITNESSES:                                                          PAGE

NO WITNESSES

ARGUMENT BY MR. MARCH .................................5
ARGUMENT BY MS. BENEDICT ............................10
ARGUMENT BY MS. OSTRANDER ..........................14

EDITED OPINION OF THE COURT ........................18


EXHIBITS:                    MARKED                    RECEIVED

NO EXHIBITS

```
 1    employee of this court.  And regardless of anything else,
 2    regardless of Ms. Ostrander's verification and attesting to
 3    Ms. McGinn-Loomis, it is the appearance that we're dealing with
 4    here.  And the appearance of impropriety is overwhelming, and
 5    the appearance of bias.
 6            I have no idea, as I've said already twice, whether
 7    the Court, in fact, has a bias or a prejudice.
 8            But what has happened here, through whatever
 9    circumstances, and I am willing to believe everything the Court
10    did was well-intended.  I'm willing to believe that everything
11    Counsel did was well-intended.
12            I'm not willing to make that same statement in
13    reference to Ms. McGinn-Loomis.
14            There is a question, well, no judge can hear this
15    case because she works in this courthouse.
16            I would say no judge who Ms. McGinn-Loomis has gone
17    to and talked to about this case can hear it.  But absent that,
18    any of the other circuit judges can hear this case.
19            Ms. Benedict says, well, Mr. Ryan, because he's an
20    attorney, therefore, all the judges are disqualified.
21            The significant difference is that Mr. Ryan has not
22    had an ex-parte communication with Your Honor or with any other
23    judge.
24            You put this all together and this is -- this is a
25    motion that has merit and that Your Honor should disqualify
```

```
 1   herself from hearing this case.
 2           THE COURT:  Thank you.  The Court will enter its
 3   ruling on the record.  I do reserve the right to modify the
 4   opinion as to information, law, and court rules as may be
 5   applicable.
 6                          * * *
 7               (Edited Opinion of the Court)
 8                          * * *
 9           To file a Motion to Disqualify a judge is very
10   serious business.  Judges are elected officials that serve and
11   are required to be impartial hearers of the facts.
12           In this case, the Court will detail its contacts with
13   Adele Loomis, with whom the Court has had, throughout its
14   tenure on the bench, little to no contact.  She's not a friend.
15   She's not an acquaintance, she's a person who works in the
16   clerk's office.
17           I did receive a telephone call from Ms. Loomis at my
18   home over the dinner hour on September 19th.
19           The length of the conversation I would estimate to be
20   no more than two minutes.
21           The discussion was primarily to apologize for
22   interrupting me at home and to request whether my home number
23   could be provided to Ms. Benedict.
24           She further indicated that she was aware of the case
25   as Claire Ryan's boyfriend's mother.
```

1  That was the extent of my conversation. A brief
2  conversation to advise me of an alleged emergency situation and
3  whether Ms. Benedict could receive my home number.
4  Emergencies and ex-parte orders are in and of
5  themselves problematic. That is why the bench rarely issues
6  them and attorneys in our legal community are sensitive to the
7  fact that they should be brought only in the most severe of
8  emergency situations. Ex-parte orders by their nature require
9  ex-parte communication. These communications do not disqualify
10  the judge from hearing the case. The other information from
11  Ms. Loomis which I received include reviewing an affidavit
12  dated September 20th, submitted by Ms. Benedict, and also an
13  affidavit that was submitted to the Court in the context of
14  receiving a PPO against Mr. Ryan and Mrs. Ryan.
15  This Motion for Disqualification is requested
16  pursuant to MCR 2.003(1), alleging the judge is personally
17  biased or prejudiced for or against a party or attorney.
18  Ms. Loomis is not a party to the action. She is not
19  a collateral party in that there has never been a request in
20  any pleading that I have reviewed to place Claire Ryan with
21  Ms. Loomis. No one suggests or requests the placement of
22  Claire Ryan with Ms. Loomis.
23  There is no order for temporary placement with
24  Ms. Loomis nor has one ever been requested.
25  In fact, all parties agree, the Ryans, Claire Ryan's

19

1    attorney, and the Guardian Ad Litem, that such a placement
2    would be inappropriate.
3         One must then look to the orders that the Court
4    entered to determine if the two-minute phone conversation
5    authorizing Ms. Benedict to contact me at home for the
6    presentation of an emergency ex-parte order influenced the
7    Court for Ms. Loomis, although she's not a party, or against
8    the Ryans in any way.
9         The order entered by the Court on September 19th
10   preserved the status quo.  It was intended to preserve the
11   child's jurisdiction within the State of Michigan, to return
12   the child to Grand Rapids in a safe location at the Bridge, and
13   to schedule an emergency hearing.
14        The Court didn't rule against the Ryans, it didn't
15   rule against Claire Ryan, it ruled for no one.  It ruled to
16   preserve the status quo when emergency allegations had been
17   made that the child was to be removed from a jurisdiction when
18   she sought to bring forward an emancipation petition,
19   guardianship hearing, or other proceedings.
20        The ex-parte order preserved the status quo to allow
21   the parties to be heard.
22        Could this possibly have the appearance of prejudice
23   or bias to preserve the status quo?
24        The Court finds that no appearance of impropriety,
25   bias or prejudice exists in the issuance of an order to

```
 1    maintain the status quo, and to schedule an emergency hearing.
 2              The second order entered by the Court appointed a
 3    guardian ad litem for Claire Ryan, Attorney Judy Ostrander.
 4              Could the two-minute conversation with Ms. Loomis to
 5    pass on a home number, or the reviewing of the affidavits in
 6    any way have an impact on the Court's order to appoint a
 7    guardian ad litem to determine the child's position in the case
 8    in order to rule on the Motion to Dismiss, the motion to move
 9    Claire Ryan back to Michigan, and the motion for release of
10    records that was to be before the Court?
11              The Court finds that there is no appearance of
12    impropriety, bias, or prejudice to any party in ordering that a
13    guardian ad litem be appointed for the child before ruling on
14    the substantive issues and matters before the Court.
15              The second order also stayed the ex-parte order
16    requiring the return of Claire Ryan to Grand Rapids from the
17    Detroit Metropolitan area.
18              Now could there be any appearance of impropriety as a
19    result of that phone call in the staying of that order, which
20    also expanded the preservation of the status quo, since, in
21    fact, Claire Ryan had been moved into a placement in Utah?
22              This was a request, in fact, made by the Ryans.
23              I find that there is no appearance of impropriety in
24    entering this stay allowing Claire Ryan to remain in her
25    placement and preserving the current status quo until the
```

```
 1   guardian ad litem report was received, heard, and the motions
 2   were argued.
 3           The Court finds that there is no personal bias and
 4   there further is no appearance of bias or prejudice in this
 5   matter or in the orders that have been generated by the Court.
 6           In fact, if there was bias or the appearance of bias,
 7   that would have been supported if I had signed a second ex-
 8   parte order presented by Ms. Benedict requesting that I order
 9   the child to be returned from Utah.
10           The Court declined to sign that ex-parte order.
11           The Court also declined to sign an ex-parte order
12   submitted by Mr. Saxe dismissing the action.
13           Would the argument for the appearance of impropriety
14   or the appearance of bias or prejudice be bolstered if the
15   Court had entered the PPO requested by Ms. Loomis against the
16   Ryans?
17           The Court declined to enter that order. And I would
18   argue because the Court is fair and impartial and considers
19   only the facts of the case, which have yet to be fully
20   presented to the Court.
21           I have yet to consider the substantive requests of
22   the respective parties.
23           The Court has only continued the status quo which has
24   not prejudiced either party.
25           It appears to the Court that the Motion for
```

1   Disqualification, filed one day before the hearing on the
2   substantive matters, was meant to further delay the case. This
3   case was presented to the Court of Appeals who declined to stay
4   the proceeding. A Motion to Dismiss is pending. I find the
5   Motion for Disqualification completely without merit. The
6   motion is denied.
7       The pleadings indicate that if this matter is to be
8   denied, there will be an appeal to the chief judge as allowed
9   by the court rule.
10      The Court, therefore, will adjourn argument on the
11  substantive matters, which were to be heard today, for one
12  week, Thursday, from 3:00, excuse me, October 24th, from
13  11:00 a.m. until noon. The pending motions include a request
14  for records, placement of Claire Ryan in Michigan, and motion
15  to dismiss, along with considering the guardian ad litem report
16  and recommendation.
17      I believe that this is more than enough time for you
18  to pursue the appeal to Judge Buth, since you are able to raise
19  this Motion to Disqualify in a very short period of time.
20                          * * *
21
22      THE COURT: So the Court will adjourn until
23  October 24th, 2001, 11:00 a.m. to noon.
24      MS. BENEDICT: Your Honor, you said Thursday the
25  24th, but Thursday is the --

23